**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

FRANK HALL, individually and
on behalf of others similarly
situated.

      Plaintiffs,

vs.

JOHNSON & JOHNSON, et al,

      Defendants.

**Civil Action No. 3:18-cv-01833-FLW-TJB**

**Hon. Freda L. Wolfson, U.S.D.J.**

---

**BRIEF IN SUPPORT OF MOTION TO QUASH SUBPOENAS**
**FILED ON BEHALF OF LEVY KONIGSBERG LLP**
**AND MOSHE MAIMON**

---

SZAFERMAN, LAKIND,
  BLUMSTEIN & BLADER, P.C.
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08648
By:  Arnold C. Lakind, Esquire
Telephone: (609) 275-0400
Fax: (609) 275-4511

Attorneys For Moving Parties
Levy Konigsberg LLP and
Moshe Maimon

#5520163v4

## **<u>TABLE OF CONTENTS</u>**

<u>**Page**</u>

A.    The Parties ........................................................................................1

B.    The Subpoenas ...................................................................................1

C.    The Securities Class Action ...............................................................3

D.    The Personal Injury Litigation ..........................................................4

E.    Summary of Argument.......................................................................4

ARGUMENT ....................................................................................................7

POINT I............................................................................................................7

A SUBPOENA DIRECTED TO A NON-PARTY
IN A CIVIL CASE WHICH SEEKS INFORMATION
PROVIDED TO THE PRESS VIOLATES THE
FIRST AMENDMENT OF THE CONSTITUTION
OF THE UNITED STATES

A.    The Right to Anonymously Provide Information is Protected
by the First Amendment of the Constitution.........................................8

B.    Application of First Amendment Principles .......................................12

POINT II ..........................................................................................................16

DEFENDANTS' SUBPOENAS SHOULD BE QUASHED
BECAUSE THEY IMPOSE AN UNDUE BURDEN ON
NON-PARTIES TO THE *HALL* LITIGATION

POINT III ....................................................................................................... 18

     THE JOHNSON & JOHNSON SUBPOENAS
     SEEK INFORMATION THAT IS NOT
     DISCOVERABLE UNDER FED. R. CIV. P. 26

CONCLUSION .................................................................................................. 21

# <u>TABLE OF AUTHORITIES</u>

**Page**

## <u>Cases</u>

*Anonymous Online Speakers v. United States Dist. Court,*
   661 F. 3d 1168 (9th Cir. 2011) ........................................................................12

*Caver v. City of Trenton,*
   192 F.R.D. 154 (D.N.J. 2000) ........................................................................20

*Concord Boat Corp. v. Brunswick Corp.,*
   169 F.R.D. 44 (S.D.N.Y. 1996)................................................................17, 19

*Cusumano v. Microsoft Corp.,*
   162 F.3d 708 (1st Cir. 1998).....................................................................17, 20

*Doe v. 2TheMart.com Inc.,*
   140 F. Supp. 2d 1088 (W.D. Wash. 2001) ....................................7, 10, 12, 13

*Echostar Commc'ns Corp. v. News Corp.,*
   180 F.R.D. 391 (D. Colo. 1998) ......................................................................20

*Enterline v. Pocono Med. Ctr.,*
   751 F. Supp. 2d 782 (M.D. Pa. 2008)..............................................................13

*Gonzales v. NBC,*
   194 F.3d 29 (2d Cir. 1998) ..........................................................................9, 12

*Heidelberg Ames., Inc. v. Tokyo Kikai Seisakusho, Lt.,*
   333 F.3d 38 (1st Cir. 2003)...............................................................................17

*Highfields Capital Mgmt. L.P. v. Doe,*
   385 F. Supp. 2d 969 (N.D. Cal. 2004)........................................................10, 12

*In re Valsartan N-Nitrosodimethylamine Contamination Prods. Liab. Litig.*
   405 F. Supp. 3d 612 (D.N.J. 2019)...................................................................19

*Lefkoe v. Jos. A Bank Clothiers, Inc.,*
   577 F. 3d 240 (4th Cir. 2009) .........................................................................12

*Los Angeles Memorial Coliseum Com. v. National Football League*,
    89 F.R.D. 489 (C.D. Cal. 1981) .......................................................................7

*McIntyre v. Ohio Elections Comm'n*,
    514 U.S. 334 (1995) ................................................................................10, 12

*McKiver v. King*,
    266 F.R.D. 92 (W.D. Pa. 2010) .................................................................13

*Riley v. Chester*,
    612 F.2d 708 (3d Cir. 1979) ........................................................9, 12, 13, 14

*Scouler v. Craig*,
    116 F.R.D. 494 (D.N.J. 1987) ....................................................................19

*Talley v. California*,
    362 U.S. 60 (1960) ..........................................................................8, 9, 10, 12

*United States v. Lee*,
    612 F.3d 170 (3d Cir. 2010) .......................................................................19

*Weinman v. Cable,*
    427 F.3d 49 (1st Cir. 2005) .........................................................................17

## Rules of Civil Procedure

Fed. R. Civ. P. 26(b)(1) ...........................................................................................18

Fed. R. Civ. P. 26(c)(1) ...........................................................................................19

Fed. R. Civ. P. 45(d)(2)(B) ........................................................................................1

Fed. R. Civ. P. 45(d) ...............................................................................................16

Fed. R. Civ. P. 45(d)(1) .............................................................................................1

This brief is submitted on behalf of Levy Konigsberg LLP ("Levy") and Moshe Maimon, Esq. in support of their motions, filed pursuant to Fed. R. Civ. P. 45(d)(2)(B), to quash subpoenas served upon them on August 5, 2021. Those subpoenas should be quashed because (1) compliance would infringe upon the movants' First Amendment right to anonymously provide information to the media; and (2) the subpoenas impose undue burdens upon the recipients in violation of Fed. R. Civ. P. 45(d)(1).

### A.    The Parties

Johnson & Johnson is a Defendant in a securities fraud class action pending within this District: *Hall v. Johnson & Johnson*, C.A. No. 3:18-cv-01833 FLW-TJB. That case advances claims that Johnson & Johnson concealed evidence from investors about the dangerous propensities associated with the use of its talc products. Levy and Mr. Maimon are personal injury lawyers who have represented plaintiffs who contracted mesothelioma as a result of exposure to Johnson & Johnson talc products. (Declaration of Moshe Maimon, ¶ 3). Neither Levy nor Mr. Maimon has taken any part in the *Hall* litigation. (Declaration of Moshe Maimon, ¶ 4).

### B.    The Subpoenas

On August 5, 2021, Johnson & Johnson served two identically worded subpoenas on Levy and Mr. Maimon, a partner in the Levy law firm. (Declaration

of Moshe Maimon, ¶ 2).  Those subpoenas sought three categories of oral and written information:

1.     All Communications, including any correspondence or Documents exchanged, between Levy Konigsberg LLP, and any Media Organization, including Reuters and Lisa Girion, concerning or relating to Johnson & Johnson, J&J Talcum Powder Products, asbestos, Dr. David Egilman, Dr. William Longo, or the Reuters Articles.

2.     All notes, transcripts, memoranda, documents, and uncut recordings (whether visual, audio, or otherwise) concerning any Communications, discussions, or interviews between Levy Konigsberg LLP and any Media Organization, including Reuters and Lisa Girion, concerning or relating to Johnson & Johnson, J&J Talcum Powder Products, asbestos, Dr. David Egilman, Dr. William Longo, or the Reuters Articles.

3.     Documents sufficient to reflect Your (Levy and Mr. Maimon's) document retention or destruction polices or procedures.

(Declaration of Moshe Maimon, ¶ 2, Exhibits A and B (Subpoenas), p. 4).

The subpoenas contained several instructions and some 15 expansive definitions.  The subpoenas defined "Communication," used in two of the three requests, to include information of any kind transmitted orally, in writing or by any electronic means.  "Levy Konigsberg LLP" was defined to mean

Levy Konigsberg LLP including its predecessors and successors and any present or former attorney, employee, shareholder, agent or representative.

*Id.*, p. 2.  The subpoenas defined "Media Organization" to include

[n]atural persons such as reporters, editors, members of the press or media, or representatives, employees, or agents thereof, engaged in disseminating information to the public, including via the

2

> internet, a website, social media, a blog, a newspaper, a magazine, any other written publication of any kind, radio, television, or other medium of communication.

*Id.* The term "Reuters Articles" is defined as

> [t]wo articles written by Lisa Girion dated December 14, 2018 entitled "Powder Keg:  Johnson & Johnson knew for decades that asbestos lurked in Baby Powder" and "J&J Kept a Guiding Hand on Talc Safety Research."

The period for which documents were sought spanned three years:  January 1, 2016 to February 1, 2019.  *Id.,* p. 3

### C.    The Securities Class Action

Based upon a review of the Plaintiffs' Complaint, *Hall v. Johnson & Johnson*, C.A. No. 3:18-cv-01833 FLW-TJB is a "federal securities class action" brought on behalf of investors who purchased shares of stock in Johnson & Johnson between February 22, 2013, and February 7, 2018.  That case was brought under the Securities Exchange Act of 1934 and Rule 10b-5 promulgated under that Act.  The Complaint charges that, between 2012 and 2017, Johnson & Johnson made a number of false and misleading statements concerning the efficacy and safety of its talc products.  It further claims that, on June 2, 2016, Reuters published an article linking talc to ovarian cancer and thereafter other media companies published articles contending that Johnson & Johnson had been aware, since the 1970's, of the risk of asbestos which had contaminated its talc products. (Declaration of Moshe Maimon, ¶ ¶ 5 to 7).

Neither Levy Konigsberg LLP nor Moshe Maimon, Esq. is a party to *Hall v. Johnson & Johnson*, C.A. No. 3:18-cv-01833 FLW-TJB; neither represent any class representatives.   To the best of Mr. Maimon's knowledge, neither he nor Levy Konigsberg are mentioned in the Reuters articles, or any other articles cited in the *Hall* Complaint.  (Declaration of Moshe Maimon, ¶ ¶ 4 and 8).

### D. The Personal Injury Litigation

Over the years, Levy Konigsberg LLP and other law firms have represented individuals who contracted mesothelioma, a cancer of the pleura and peritoneum, caused by exposure to asbestos – including asbestos contaminating talc products. Johnson & Johnson has been a defendant in many the cases brought by the Levy firm and others.  In the course of that litigation, Johnson & Johnson, along with two talc suppliers, Imerys Talc America and Cyprus Mines Corporation, have produced voluminous documents relating to talc and the health implications of its use.   As required by the governing court rules, documents produced by Imerys and Cyprus were provided to Johnson & Johnson. (Declaration of Moshe Maimon, ¶ ¶ 3 and 9).

### E. Summary of Argument

As set forth in Point I below, compliance with the subpoenas would infringe upon the First Amendment rights of the Levy firm and Mr. Maimon.  To the extent that information was provided to the media by the subpoenas' recipients,

compliance would result in the disclosure of (1) the names of those individuals who gave information to the media; and (2) the content of their communications. The resulting infringement of First Amendment rights is impermissible; it is unnecessary; and it would serve no legitimate purpose.

Disclosure is unnecessary because, if documents were provided to the media by Levy or Mr. Maimon, those documents would have been selected from documents produced in litigation and admitted into evidence in cases which the Levy firm litigated against Johnson & Johnson.  Therefore Johnson & Johnson would already have every document described in its subpoenas.  (Declaration of Moshe Maimon, ¶¶ 9 to 12).  Mr. Maimon is not aware of any situation in which information was provided to a media source that was not admitted into evidence in a case which his firm brought against Johnson & Johnson.  (Declaration of Moshe Maimon, ¶ 11 to 12).  As a result, the only conceivable purpose of the subpoena is to obtain the names of those attorneys who may have provided information to the press and an identification of which Johnson & Johnson documents were provided by those attorneys – but that information has no possible relevance to the *Hall* litigation.

Also, the selection of the law firms to whom subpoenas were issued undermines their legitimacy.  Several law firms have settled all their mesothelioma cases with Johnson & Johnson.  While Levy has settled some cases with that

defendant, Levy is continuing to litigate several others against Johnson & Johnson. (Declaration of Moshe Maimon, ¶ 13). Mr. Maimon has canvassed other law firms involved in personal injury talc litigation, and it appears that subpoenas have been issued only to those law firms that continue to litigate mesothelioma cases with Johnson & Johnson. (Declaration of Moshe Maimon, ¶¶ 13 and 14). If the identification of the sources of particular documents provided to the press was truly needed to defend Johnson & Johnson in the *Hall*, litigation, Johnson & Johnson would have issued subpoenas to all firms that have litigated talc cases, not just to those who continue to do so.

Moreover, as argued in Point II, the subpoenas impose an undue burden upon the recipients because they require the recipients to review their electronic files, to canvass many past and present employees to see if, during a 37 month period, any one of their employees provided information to an unlimited number of print, internet, or social media platforms, as well as other media organizations. And, as argued in Point III, Johnson & Johnson cannot meet its burden to show that the information sought is relevant.

# **ARGUMENT**

## **POINT I**

**A SUBPOENA DIRECTED TO A NON-PARTY
IN A CIVIL CASE WHICH SEEKS INFORMATION
PROVIDED TO THE PRESS VIOLATES THE
FIRST AMENDMENT OF THE CONSTITUTION
OF THE UNITED STATES**

The First Amendment of the Constitution of the United States provides as follows:

> Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

The issuance of a subpoena is state action which implicates First Amendment protections. *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1094 (W.D. Wash. 2001); *Los Angeles Memorial Coliseum Com. v. National Football League*, 89 F.R.D. 489 (C.D. Cal. 1981). Compliance with the subpoena issued by Johnson & Johnson here would reveal (1) the names of individuals who may have provided information to the media; and (2) the identification of the particular information provided. The First Amendment protects American citizens against compelled disclosures of this nature and thus, the subpoenas should be quashed.

**A.      The Right to Anonymously Provide Information is Protected by the First Amendment of the Constitution**

Among the rights protected by the First Amendment of the Constitution of the United States is the right to anonymously provide information to the public. *Talley v. California*, 362 U.S. 60 (1960).  In *Talley*, the City of Los Angeles had adopted an ordinance which prohibited the distribution of handbills if they failed to disclose the name of the person who printed, wrote, compiled or manufactured the handbill.  The defendant there had distributed anonymous handbills that advocated boycotting certain local merchants and, as a result, he was fined $10.   Following an unsuccessful appeal of his fine, Talley sought certiorari to the Supreme Court of the United States which reversed the conviction reasoning that:

> There can be no doubt that such an identification requirement would tend to restrict freedom to distribute information and thereby freedom of expression.

*Id*. at 64.  Continuing, the Court wrote:

> Anonymous pamphlets, leaflets, brochures and even books have played an important role in the progress of mankind. Persecuted groups and sects from time to time throughout history have been able to criticize oppressive practices and laws either anonymously or not at all. The obnoxious press licensing law of England, which was also enforced on the Colonies was due in part to the knowledge that exposure of the names of printers, writers and distributors would lessen the circulation of literature critical of the government.

*Id.*

While the rationale underlying the decision in *Talley* was based upon the recognition that anonymous speech critical of the government enjoyed First Amendment protection, the anonymous speech there at issue was addressed to private parties.  Thus, under *Talley*, the right to speak anonymously is intended to protect critical comment, and comprehends speech addressed to government action as well as speech addressed to private conduct.

Where the information subpoenaed was provided to the press, there is even a greater need for expansive protection.  This is so because the disclosure of a source's identity could impair the news gathering process and chill First Amendment rights.  *Gonzales v. NBC*, 194 F.3d 29, 35 (2d Cir. 1998):

> The resulting wholesale exposure of press files to litigant scrutiny would burden the press with heavy costs of subpoena compliance, and could otherwise impair its ability to perform its duties-- **particularly if potential sources were deterred from speaking to the press, or insisted on remaining anonymous, because of the likelihood that they would be sucked into litigation.** (Emphasis added).

*See also Riley v. Chester*, 612 F.2d 708, 714 (3d Cir. 1979):

> The interrelationship between newsgathering, news dissemination and the need for a journalist to protect his or her source is too apparent to require belaboring. A journalist's inability to protect the confidentiality of sources s/he must use will jeopardize the journalist's ability to obtain information on a confidential basis.  This in turn will seriously erode the essential role played by the press in the dissemination of information and matters of interest and concern to the public. The role of "an untrammeled press as a vital source of public information" was one of the

primary bases for its First Amendment protection. (internal citations omitted).

Several decades after its decision in *Talley*, the Supreme Court returned to the First Amendment implications of the right to anonymity.  In doing so, it expanded the analytical basis for First Amendment protection.  While the Court in *Talley* and several Circuit Courts had premised the protection of anonymity on public policy grounds, the Supreme Court in *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995), based its decision on the preservation of personal autonomy:

> Accordingly, an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment.

Given the importance of the First Amendment protections, Courts have readily quashed subpoenas issued in order to obtain evidence in cases arising in the business context. *See e.g. Highfields Capital Mgmt. L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2004).  There, plaintiff alleged that an anonymous internet posting infringed on the trademark of the publicly traded corporation.  Highfields had issued a subpoena to Yahoo seeking to learn the name of the anonymous poster so that the source could be sued.  The poster, under the pseudonym of Doe, filed a motion to quash the subpoena which the Court granted:

> While plaintiff seems to suggest otherwise, the interests and policies invoked by the defendant are of considerable potential

10

significance. Indeed, they are rooted in the First Amendment to the Constitution of the United States. What defendant seeks to protect through his motion to quash is the right to express most effectively and anonymously, without fear of expensive adverse consequences, his views about matters in which many other members of the public are interested. In this case, those matters involve the performance and policies of a large, publicly traded corporation (SGI) and, perhaps less obviously, its largest single shareholder (Highfields Capital).

*Id.* at 974-75.

In another business case, a court quashed a subpoena for information sought to defend against a plaintiff's complaint. *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088. That case was a derivative shareholder action alleging fraud on the market. The defendant, who claimed that its conduct was not the cause of the plaintiff's injury, subpoenaed a public message board to obtain the names of 23 individuals who had disparaged the plaintiff-corporation. One poster, under the pseudonym of NoGuano, filed a motion to quash the subpoena. Granting the motion, the Court reasoned that "the right to speak anonymously was of fundamental importance to the establishment of our Constitution." *Id.* at 1092. The unmasking of anonymous speakers, the opinion continues, has a chilling effect on speech. When an anonymous internet poster is not a party to the case, "non-party disclosure is only appropriate in the exceptional case where the compelling need for the discovery sought outweighs the First Amendment rights of the anonymous speaker." *Id.* at 1095.

11

Thus, whether it is premised on the public policy to encourage critical speech, *Talley*, on the desire to facilitate news gathering, *Riley* and *Gonzales*, on the danger of chilling the cooperation of news sources, *Highfields*, or on the goal of preserving personal autonomy, *McIntyre*, the First Amendment places limits on the ability to compel disclosure of information provided to the media.

## B.    Application of First Amendment Principles

While First Amendment protections may yield when information is sought to defend a criminal case or in the law enforcement context, a non-party's First Amendment rights enjoy greater protection when a subpoena is issued in a civil case particularly when the information sought was communicated to the media. And while the tests employed in the different Circuit courts have varied, all require an enhanced showing to warrant disclosure of information provided to the media by an anonymous speaker.  *See e.g., Anonymous Online Speakers v. United States Dist. Court*, 661 F. 3d 1168 (9th Cir. 2011) (discussing various tests); *Lefkoe v. Jos. A Bank Clothiers, Inc.*, 577 F. 3d 240, 249  (4th Cir. 2009) ("We thus conclude that the Doe Client's claimed First Amendment right to anonymity is subject to a substantial governmental interest in disclosure so long as disclosure advances that interest and goes no further than reasonably necessary"); and *2TheMart.com Inc.,* 140 F. Supp. 2d 1088, in which the Court quashed a subpoena because of the failure of the issuer to satisfy the following four part test:

12

> (1) the subpoena seeking the information was issued in good faith
> and not for any improper purpose, (2) the information sought
> relates to a core claim or defense, (3) the identifying information is
> directly and materially relevant to that claim or defense, and (4)
> information sufficient to establish or to disprove that claim or
> defense is unavailable from any other source.

*Id.* at 1095-97. *See also Enterline v. Pocono Med. Ctr.*, 751 F. Supp. 2d 782 (M.D.
Pa. 2008) and *McKiver v. King*, 266 F.R.D. 92 (W.D. Pa. 2010) (both applying
*2TheMart.com Inc* test and denying enforcement of subpoenas in civil matters).

The Third Circuit Court of Appeals has embraced a similarly rigorous test
which requires consideration of several factors. *Riley*, 612 F.2d at 716. Among
the factors to be considered are the following: was the subpoenaed party a witness
to the events that are the subject of the information sought? Is the recipient a party
to the litigation in which the subpoena was issued? Does the recipient have a
personal stake in the outcome of the litigation? All of these factors weigh against
enforcement of the subpoena issued to Levy and Mr. Maimon.

In addition, the issuer of the subpoena must show that the information
sought is material, relevant and necessary. *Id.* Johnson & Johnson, and not Levy
or Mr. Maimon, knows why the information has been subpoenaed. However,
given the nature of the allegations in the *Hall* Complaint, the information sought
does not appear to be material, relevant or necessary. The securities litigation will
likely entail evidence about what Johnson & Johnson disclosed in its various
investment reports, what it knew about the dangers of talc, and whether Johnson &

Johnson was candid in its reporting.  The identity of individuals who may have communicated to the press and the content of those communications can have no bearing on Johnson & Johnson's liability or on its defense.  The information sought is thus neither material nor relevant.

Nor is the information necessary since Johnson & Johnson already has any information that Levy or Mr. Maimon might have communicated to the press. (Declaration of Moshe Maimon, ¶¶ 9 to 11).  And were that information truly necessary, the subpoenas would have been directed to all law firms:  those firms with whom Johnson & Johnson settled, as well as those with whom it continues to litigate.  As noted in Mr. Maimon's Declaration, the subpoenas have been issued only to those personal injury lawyers who have not settled talc cases with Johnson & Johnson.  As best as Mr. Maimon can determine, subpoenas were not issued to counsel who settled personal injury cases with Johnson & Johnson – **including those quoted in the articles**.  Johnson & Johnson's selective use of the subpoena power undermines any argument that the information sought is necessary.

Finally, the Third Circuit Court, in *Riley v. Chester*, 612 F.2d at 716-17, required a demonstration that the information sought is not available elsewhere:

> All courts which have considered this issue have agreed that the federal common law privilege of news writers shall not be breached without a strong showing by those seeking to elicit the information that there is no other source for the information requested.

14

The requisite balance cannot be made without a showing "as to the effort to obtain (the information) from other sources."  The party seeking the information must show "that his only practical access to crucial information necessary for the development of the case is through the newsman's sources."  Plaintiffs must show that they exhausted other means of obtaining the information.  The material sought must "provide a source of crucial information going to the heart of the (claim). . . ."  (citations omitted).

All of the information which Johnson & Johnson seeks is available from another source:   their own trial and litigation counsel.  Any possible relevant documents in Levy or Mr. Maimon's possession were produced in litigation and Johnson & Johnson would thus already be in the possession of the information it has subpoenaed.  (Declaration of Moshe Maimon, ¶¶ 10 to 12).  Thus, Johnson & Johnson cannot make any showing, let alone a strong showing, that there is no other source for the information it seeks.

Accordingly, there is no basis to infringe upon the First Amendment rights of the Levy law firm or Mr. Maimon and the subpoenas issued to them should be quashed.

# POINT II

## DEFENDANTS' SUBPOENAS SHOULD BE QUASHED BECAUSE THEY IMPOSE AN UNDUE BURDEN ON NON-PARTIES TO THE *HALL* LITIGATION

Fed. R. Civ. P. 45(d) provides that

A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.

The subpoenas issued in this matter require the recipients to provide

information

- Transmitted to an unlimited number of "Media Organizations";

- which include multiple video, audio and electronic platforms, among them internet, social media, blogs, newspapers, magazines, radio, television, and "any other written publication of any kind";

- potentially supplied by any number of present and past employees of Levy Konigsberg LLP; and

- including oral, written and electronic transmissions in any one of several formats:  email, text messages, mobile messages, Snapchat, Whatsapp, Signal, WeChat, Kakao, Twitter, voice messages and information of any "kind."

In assessing whether a subpoena imposes an undue burden, a Court is to

consider the status of the recipients as non-parties:

It is also noteworthy that the respondents are strangers to the antitrust litigation; insofar as the record reflects, they have no dog in that fight. Although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of

16

> modern civil litigation. Non-parties have a different set of
> expectations. Accordingly, concern for the unwanted burden thrust
> upon non-parties is a factor entitled to special weight in evaluating
> the balance of competing needs.

*Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) (citations

omitted). *See also Weinman v. Cable,* 427 F.3d 49, 53 (1st Cir. 2005):

> Even with appellants' reduced request, the evaluation of benefit to
> appellants versus burden on appellee is a demanding and sensitive
> one. On the one hand, appellee is a nonparty to the underlying
> litigation. This fact is entitled to special weight in evaluating the
> balance of competing needs.

*Id*. at 53. A subpoena that imposes an undue burden on a non-party may be

quashed even if it seeks "relevant materials or testimony." *Id.* at 53; *see,*

*Heidelberg Ames., Inc. v. Tokyo Kikai Seisakusho, Lt.*, 333 F.3d 38 (1st Cir. 2003).

An assessment of burden turns on an examination of the (1) relevance of the

information, (2) a party's need for the documents, (3) the breadth of the request,

(4) the time period covered, (5) the burden imposed; and (6) the status of the

witness as a non-party. *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44,

49 (S.D.N.Y. 1996).

As discussed in Point I above, factors 1, 2 and 6 weigh against enforcement

of the subpoenas. Factor 3 requires consideration of the breadth of the request,

which is extensive, requiring review of electronic data, interviews with many past

and present Levy employees, and a search for documents provided to a universe of

unidentified media organizations, radio, video and electronic. Moreover, the

recipients will have to review three years of records extending to February 1, 2019: a date which is beyond the period of time at issue in the *Hall* complaint.

Since the names of all of the media organizations are not disclosed in the subpoenas, the recipients would be left to speculate on their search queries.  The burden to review written data, to speak to many past and current employees going back several years, to search electronically stored information, and to review paper files is a burden which should not be imposed on a non-party.  Therefore, factor 5 weighs against enforcement of the subpoena.

Johnson & Johnson's subpoenas are unduly burdensome.

**POINT III**

**THE JOHNSON & JOHNSON SUBPOENAS
SEEK INFORMATION THAT IS NOT
DISCOVERABLE UNDER FED. R. CIV. P. 26**

The information sought in the Johnson & Johnson subpoenas may, for purposes of assessing relevance, be grouped into three categories:  (1) communications with media organizations (item 1); (2) notes of communications with media organizations (item 2); and (3) the recipients' document retention policies (item 3).   None of the information sought is relevant.

Fed. R. Civ. P. 26(b)(1) provides that:

> Parties may obtain discovery regarding any non-privileged matter
> that is relevant to any party's claim or defense - including the
> existence, description, nature, custody, condition, and location of any

18

documents or other tangible things and the identity and location of persons who know of any discoverable matter.

While discovery is broad, it must be proportional to the needs of the case. *Id*;  *In re Valsartan N-Nitrosodimethylamine Contamination Prods. Liab. Litig.* 405 F. Supp. 3d 612 (D.N.J. 2019).  Thus, the Federal Rules do not confer an unlimited right of discovery to any party and a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  The right to such a protective order extends to both parties and non-parties who have been served with subpoenas.  *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. at 48.

As a threshold matter, "Rule 26(b) requires that any requested discovery be relevant to a party's claim or defense, and a subpoena that 'sweepingly pursues material with little apparent or likely relevance to the subject matter [ ] runs the [ ] risk of being found overbroad and unreasonable.'"  *Id.* at 50.  Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."  *See also United States v. Lee*, 612 F.3d 170, 184 n. 14 ( 3d Cir. 2010).

Relevance is determined "in light of the allegations of the complaint." *Scouler v. Craig*, 116 F.R.D. 494, 496 (D.N.J. 1987).  And the party seeking discovery "has the burden of showing that the information sought is relevant to

19

the subject matter of the action and may lead to admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000).  (citations omitted). This burden is heavier when the discovery is sought from a non-party.  *Cusumano v. Microsoft Corp.*, 162 F.3d 708; *Echostar Commc'ns Corp. v. News Corp.*, 180 F.R.D. 391, 394 (D. Colo. 1998).

It is thus incumbent upon Johnson & Johnson to demonstrate why the information which it seeks is relevant.  Given the nature of the allegations in the *Hall* Complaint, it is difficult to understand how Johnson & Johnson can meet its heavy burden to demonstrate the relevance, in a securities fraud class action, of communications between tort counsel and media organizations, notes of communications between tort counsel and media organizations, and the subpoena's recipients' document retention policies.

## CONCLUSION

The First Amendment of the Constitution of the United States affords protection to the Levy firm and Mr. Maimon from having to comply with Defendants' subpoenas.  Even were that not the case, the subpoenas are unduly burdensome.  And it would be particularly egregious to impose an undue burden on non-parties in a civil matter as a consequence of their exercise of Constitutional rights when the information sought is not even relevant.  For the foregoing reasons, the subpoenas issued to Levy and Mr. Maimon should be quashed.

s/Arnold C. Lakind
Arnold C. Lakind

Dated:  August 31, 2021