Jack N. Frost, Jr. Esq.
**FAEGRE DRINKER**
**BIDDLE & REATH LLP**
600 Campus Drive
Florham Park, NJ 07932
(973) 549-7338
jack.frost@faegredrinker.com

*Counsel for Defendants*

[Additional counsel appear on signature page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| FRANK HALL, Individually and on Behalf of All Others Similarly Situated, | No. 3:18-CV-01833-FLW-TJB |
| Plaintiff, | Hon. Freda L. Wolfson |
| v. | Hon. Tonianne J. Bongiovanni |
| JOHNSON & JOHNSON et al., | |
| Defendants. | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR
## MOTION TO SUPPLEMENT THE CLASS CERTIFICATION RECORD

Plaintiff's Response does not oppose Defendants' request that the Court consider the December 20, 2021, Lanier Declaration (Mot. Ex. A) when ruling on class certification. In a footnote, Plaintiff says only that "the Court would be within its discretion to disregard" the Declaration because it is "untimely." (Resp. 2 n.4.) But Plaintiff does not dispute either that Defendants promptly filed their motion after receiving the Declaration (within two days), or that caselaw supports considering new evidence relevant to certification. (*Compare id. with* Mot. 3–4.)[1] Indeed, the Response expands the class certification record even further, including with excerpts from a trial transcript Plaintiff had while briefing class certification and with a deposition transcript it has had for months. (*See* Resp. Exs. 1–3.) The Court should grant Defendants' motion and consider the Lanier Declaration.

Implicitly recognizing that the Lanier Declaration does indeed powerfully corroborate Defendants' price impact evidence about the *Reuters* Article, the Response is instead devoted to arguing that claims based on that Article should be certified anyway. None of the Response's four arguments withstand scrutiny.

*First*, Plaintiff argues the Lanier Declaration provides "no reliable basis" to conclude that "all information contained in the *Reuters* Report was part of the

---

[1] The one case Plaintiff cites supports Defendants. That case considered the new evidence, even though (unlike here) it was submitted after the certification ruling. *See City Select Auto Sales, Inc. v. David/Randall Assocs., Inc.*, 96 F. Supp. 3d 403, 407, 413–14 (D.N.J. 2015) (cited in Resp. 2 n.4).

public record," based on a second declaration by Lanier dated December 30, 2021

(the "Second Lanier Declaration"). (Resp. 1, 7–8.) But the Second Lanier

Declaration does not undermine the first – Lanier did not retract anything. (Resp.

Ex. 1.) The facts in the first Lanier Declaration are thus ***uncontroverted***:

- Lanier was the "***primary source***" for the *Reuters* Article;

- "***Everything*** [Lanier] provided to Ms. Girion was publicly available prior to the publication of the *Reuters* Article";

- Lanier, after publication, "recognized ***all*** the information and documents referenced in the *Reuters* Article as materials that [he] had provided to Ms. Girion"; and

- Lanier "did not identify [in the Article] ***any*** references to information or documents that were not part of the public record prior to the publication of the *Reuters* Article."

- The *Reuters* Article "'***serve***[***d***] [***Lanier's***] ***purposes***' as a litigator'" for product liability plaintiffs.

(Mot. Ex. A ¶¶ 3–6 (emphasis added).)

Rather, the Second Lanier Declaration merely confirms that the original

declaration was limited to Lanier's personal knowledge. As he explains, the first

declaration addressed "what [he] provided to Ms. Girion" and "was not meant to

eliminate the possibility that Ms. Girion may have had additional source interviews

or documents." (Resp. Ex. 1 ¶¶ 3–6.) But this personal-knowledge limitation is

unremarkable; all proper declarations are so limited. And Plaintiff cannot identify

any other basis for its allegation that there were allegedly corrective "never-before-

seen internal J&J documents" (ECF No. 33, FAC ¶ 223). Plaintiff's suggestion that

some other source or document might exist is wholly speculative, and as a matter of law fails to rebut Defendants' undisputed evidence that Lanier "recognized *all* the information and documents referenced in the *Reuters* Article," and "[*e*]*verything*" in the Article "was publicly available prior to [its] publication" (Mot. Ex. A ¶¶ 4–5 (emphasis added)). *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 596 (3d Cir. 2012) ("[A] district court must make a factual determination, based on a preponderance of the evidence, that Rule 23's requirements have been met. Mere speculation is insufficient.") (cleaned up).

*Second*, Plaintiff repeats the pivot it attempted in its class certification reply, shifting its theory of what information in the *Reuters* Article was allegedly corrective. Plaintiff pleaded in its complaint, and argued at the motion to dismiss stage, that the *Reuters* Article was corrective because it revealed "never-before-seen internal J&J documents." (FAC ¶¶ 223–44; ECF No. 49, MTD Order at 62–66 (crediting and relying on that allegation).) But in the face of Defendants' proof that every J&J document linked or quoted in the Article was previously publicly available, Plaintiff's reply abandoned this theory. (*See* ECF No. 98, Pl. Class Cert. Reply.) And with Defendants' evidence confirmed by the Lanier Declaration, it is no surprise that Plaintiff still cannot identify a single internal J&J document that was not public prior to the *Reuters* Article. (*See* Resp.)

Instead, the Response points to other purportedly "new" "facts" that were

identified as allegedly corrective for the first time in Plaintiff's class certification reply. (*Id.* 3–4 (also pointing to the rehash of these "facts" in the rebuttal report of Plaintiff's expert Feinstein); *see also* Pl. Class Cert. Reply 26–27 & Exs. 1 (Feinstein rebuttal report), 13 (chart of purportedly "new" "facts").) This attempt to amend the complaint through briefing remains improper. *See, e.g.*, *Bell v. City of Philadelphia*, 275 F. App'x 157, 160 (3d Cir. 2008) ("A plaintiff may not amend his complaint . . . through his brief."); *Dicuio v. Brother Int'l Corp.*, 2011 WL 5557528, at *5 n.4 (D.N.J. Nov. 15, 2011) (same). And it still fails on the merits for the reasons identified in Defendants' class certification sur-reply, which the Response ignores. (ECF No. 105, Defs. Class Cert. Sur-Reply 5–9 & Ex. 1; *see also* Ex. B (excerpt of Sur-Reply Ex. 1 responding to Plaintiff's "new" "facts").)[2]

The only point in the Response incremental to the prior briefing concerns Dr. Arthur Langer's statement that he "stood by all of his findings" (Resp. 3), which included a 1971 unpublished, non-peer-reviewed finding of trace amounts of chrysotile and a 1976 published, peer-reviewed journal article that found no asbestos (Ex. C, Langer Dep. 109:24–118:12, 124:18–125:22, 133:24–135:2). Plaintiff cites Langer's August 2021 deposition testimony, but contrary to

---

[2] Plaintiff's reference to "J&J's nonstop specific denials" is also a repeat of prior briefing. (Resp. 6.) As Defendants have explained, this argument cannot be reconciled with the efficient market theory Plaintiff relies on for certification, and is not supported by Plaintiff's own expert. (Defs. Class Cert. Sur-Reply 10–11, 17 n.20 (also citing Defendants' expert report).) The Response is silent on both points.

Plaintiff's suggestion, that testimony shows that Langer's stance was no secret. Langer testified that "of course" he told "various entities" that he stood by his findings "long before 2017," let alone the 2018 *Reuters* Article. (*Id.* 134:16–135:23.) Plus, Plaintiff's position makes no sense: according to its reasoning, if Langer said again this year that he still stood by his findings, that would be "new." This is inconsistent with the efficient market theory on which certification depends – confirmation of something previously publicly known is not "new" under that theory. (*See* ECF No. 97-29 ¶¶ 56–64 (report of Defendants' expert Kleidon).)

Also false is the Response's assertion that "J&J actively concealed this information and made misleading statements about Dr. Langer's findings" at the July 2018 *Ingham* trial. (Resp. 5.) The cited *Ingham* transcript refers to a 1976 press release by Mount Sinai Hospital, which stated that Johnson's Baby Powder was "consistently free of asbestos" and a "useful and safe" product. (*See* Resp. Ex. 3 at 832:17–22, 834:1–7; Ex. D (press release); *see also* Ex. C, Langer Dep. 118:14–119:14, 122:14–25.) J&J's counsel accurately described the press release; Plaintiff's assertion that they said Langer had "retracted his findings" (Resp. 5) is a blatant misrepresentation. Moreover, the *Ingham* transcript is not a challenged statement in this case, so this point is legally irrelevant to class certification.

*Third*, Plaintiff asserts that Defendants' "own expert has also admitted that the *Reuters* Report revealed new information to the market." (Resp. 2.) Plaintiff's

artful wording is highly misleading. To have legally-relevant price impact, information must be both (i) new and (ii) fraud-related. Plaintiff tellingly only references newness because, as Defendants' expert explained, none of the information at issue was corrective of the alleged fraud, i.e., concerned information Defendants had allegedly concealed. (*See* Ex. E, Kleidon Dep. 143:13–148:11, 151:3–153:2, 157:7–160:9 (addressing this issue); Defs. Class Cert Sur-Reply 8–9.) This argument therefore is without merit.

*Fourth*, Plaintiff reiterates the bare fact that J&J's stock price dropped by 10%, and adds nothing to prior briefing on this point. (Resp. 6–7.) As Defendants have explained, a stock drop is not *res ipsa loquitur*; that the market reacted does not establish that the *allegedly corrective information in the Article* impacted the price. (ECF No. 96, Defs. Class Cert. Opp. 36–38.) The Response notably provides no answer to Defendants' expert testimony that the market reaction was caused by aspects of the Article other than the (previously public) allegedly corrective information – namely the one-sided and incendiary way the Article adopted the product liability plaintiffs' lawyers' arguments, and thereby created a massive, free advertising campaign to recruit new product liability plaintiffs and influence the nationwide jury pool. (*See id.*)

*     *     *

The Lanier Declaration is uncontroverted evidence corroborating that the

*Reuters* Article contained no new, allegedly corrective information, and therefore there was no price impact on December 14, 2018. Defendants request that the Court consider the Lanier Declaration and deny certification of claims based on the *Reuters* Article.

Dated: January 11, 2022

Respectfully Submitted,

/s/ *Jack N. Frost, Jr.*

Jack N. Frost, Jr.
**FAEGRE DRINKER BIDDLE &
REATH LLP**
600 Campus Drive
Florham Park, NJ 07932
(973) 549-7338
jack.frost@faegredrinker.com

Walter C. Carlson (*pro hac vice*)
Kristen R. Seeger (*pro hac vice*)
John M. Skakun III (*pro hac vice*)
Christopher Y. Lee (*pro hac vice*)
Neil H. Conrad (*pro hac vice*)
Abigail B. Molitor (*pro hac vice*)
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000
wcarlson@sidley.com
kseeger@sidley.com
jskakun@sidley.com
chris.lee@sidley.com
nconrad@sidley.com
amolitor@sidley.com

Robert M. Stern (*pro hac vice*)
**ORRICK HERRINGTON &
SUTCLIFF LLP**

Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005
(202) 339-1706
rstern@orrick.com

*Counsel for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

       I, Jack N. Frost, hereby certify that on January 11, 2022, I caused the foregoing **Defendants' Reply in Support of Their Motion to Supplement the Class Certification Record** to be filed electronically using CM/ECF, which will effect service to the registered users below:

<u>Counsel for Plaintiff</u>:
       James E. Cecchi (jcecchi@carellabyrne.com)
       **CARELLA, BYRNE, CECCHI, OLSTEIN,**
       **BRODY & AGNELLO, P.C.**
       5 Becker Farm Road
       Roseland, NJ 07068
       (973) 994-1700

       Darren J. Robbins (darrenr@rgrdlaw.com)
       Arthur C. Leahy (artl@rgrdlaw.com)
       Robert R. Henssler Jr. (bhenssler@rgrdlaw.com)
       Nathan R. Lindell (nlindell@rgrdlaw.com)
       Hillary B. Stakem (hstakem@rgrdlaw.com)
       Matthew J. Balotta (mbalotta@rgrdlaw.com)
       Laura Andracchio (landracchio@rgrdlaw.com)
       **ROBBINS GELLER RUDMAN & DOWD LLP**
       655 West Broadway, Suite 1900
       San Diego, CA 92101
       (619) 231-1058

<u>Counsel for Defendants</u>:
       Walter C. Carlson (wcarlson@sidley.com)
       Kristen R. Seeger (kseeger@sidley.com)
       John M. Skakun III (jskakun@sidley.com)
       Christopher Y. Lee (chris.lee@sidley.com)
       Neil H. Conrad (nconrad@sidley.com)
       Abigail B. Molitor (amolitor@sidley.com)
       **SIDLEY AUSTIN LLP**
       One South Dearborn Street
       Chicago, IL 60603
       (312) 853-7000

       Robert M. Stern (rstern@orrick.com)
       **ORRICK HERRINGTON & SUTCLIFF LLP**

Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005
(202) 339-1706

Dated: January 11, 2022                    /s/ *Jack N. Frost, Jr.*

Jack N. Frost, Jr.
**FAEGRE DRINKER BIDDLE &
REATH LLP**
600 Campus Drive
Florham Park, NJ 07932
(973) 549-7338
jack.frost@faegredrinker.com

*Counsel for Defendants*