NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANK HALL, et al. | |
| Plaintiffs, | Civil Action No. 18-1833 (GC) |
| v. | |
| | Memorandum Opinion |
| JOHNSON & JOHNSON, et al., | |
| Defendants. | |
| WILLIAM LONGO, | |
| Plaintiff, | Civil Action No. 21-20040 (FLW) |
| v. | |
| | Memorandum Opinion |
| JOHNSON & JOHNSON, | |
| Defendant. | |
| SMITH LAW FIRM, PLLC, et al. | |
| Plaintiffs, | Civil Action No. 22-658 (GC) |
| v. | |
| | Memorandum Opinion |
| JOHNSON & JOHNSON, et al., | |
| Defendants. | |

**BONGIOVANNI, Magistrate Judge**

This matter comes before the Court upon non-parties', Levy Konigsberg LLP ("Levy"), Moshe Maimon ("Maimon"), Hobson & Bradley, William Longo ("Longo"), the Smith Law Firm, PLLC (the "Smith Firm"), and Robert Allen Smith, Jr. ("Smith"), motions to quash subpoenas issued to them by Johnson & Johnson ("J&J"), seeking information alleged to be relevant to the securities class action lawsuit, *Hall v. Johnson & Johnson, et al.*, Civil Action No. 18-1833 (GC)

("*Hall*" or the "*Hall* matter"), pending in the District of New Jersey. J&J opposes all of the non-parties' motions to quash. The Court has reviewed all arguments raised in favor of and in opposition to the motions to quash. The Court considers the motions to quash without argument pursuant to L.Civ.R. 78.1(b). For the reasons stated below, the motions to quash are GRANTED.

### I.     Background and Procedural History

As stated above, the subpoenas at issue in the pending motions all relate to J&J's attempt to obtain discovery allegedly relevant to the claims at issue in the *Hall* matter. *Hall* is a putative class action securities litigation in which Lead Plaintiff San Diego County Employees Retirement Association ("Plaintiff"), and other similarly situated investors, purchased J&J stock between February 2013 and October 2018, and claim that J&J, and the named Individual Defendants, violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. In *Hall*, Plaintiff also alleges that the Individual Defendants violated Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). As explained by the District Court in its decision on J&J and the Individual Defendants' motion to dismiss, Plaintiff asserted that these violations occurred when, "Defendants fraudulently inflated the value of J&J's stock by issuing false and misleading statements as part of a long-running scheme to conceal the truth from investors that the Company's talc products were contaminated with asbestos, and that Plaintiff and other investors relied on these material misrepresentations and omissions to their detriment." Op. of 12/27/2019 at 1-2; Docket Entry No. 49.

The subpoenas at issue are essentially identical. Those issued to Levy and Maimon seek the following three categories of information:

1. All Communications, including any correspondence or Documents exchanged, between Levy Konigsberg LLP[/You], and any Media Organization, including Reuters

     and Lisa Girion, concerning or relating to Johnson & Johnson, J&J Talcum Powder Products, asbestos, Dr. David Egilman, Dr. William Longo, or the Reuters Articles.

2. All notes, transcripts, memoranda, documents, and uncut recordings (whether visual, audio, or otherwise) concerning any Communications, discussions, or interviews between Levy Konigsberg LLP and any Media Organization, including Reuters and Lisa Girion, concerning or relating to Johnson & Johnson, J&J Talcum Powder Products, asbestos, Dr. David Egilman, Dr. William Longo, or the Reuters Articles.

3. Documents sufficient to reflect Your document retention or destruction polices or procedures.

(Declaration of Moshe Maimon, ¶ 2, Exs. A and B at 4; Docket Entry No. 129-2 in Civil Action No. 18-1833).

    The subpoena issued to Hobson and Bradley seeks:

1. All Communications, including any correspondence or Documents exchanged, between Hobson & Bradley and any Media Organization, including Reuters and Lisa Girion, concerning or relating to Johnson & Johnson, J&J Talcum Powder Products, asbestos, Dr. David Egilman, Dr. William Longo, or the Reuters Articles.

2. All notes, transcripts, memoranda, documents, and uncut recordings (whether visual, audio, or otherwise) concerning any Communications, discussions, or interviews between Hobson & Bradley and any Media Organization, including Reuters and Lisa Girion, concerning or relating to Johnson & Johnson, J&J Talcum Powder Products, asbestos, Dr. David Egilman, Dr. William Longo, or the Reuters Articles.

3. Documents sufficient to reflect Your document retention or destruction polices or procedures.

(Declaration of Tina Bradley, ¶ 2, Ex. A at 4; Docket Entry No. 130-2).

    Likewise, the subpoena to Longo seeks:

1. All Communications, including any correspondence or Documents exchanged, between You and any Media Organization, including Reuters and Lisa Girion, concerning or relating to Johnson & Johnson, J&J Talcum Power Products, asbestos, Dr. David Egilman, or the Reuters Articles.

2. All notes, transcripts, memoranda, documents, and uncut recordings (whether visual, audio, or otherwise) concerning any Communications, discussions, or interviews between You and any Media Organizations, including Reuters and Lisa Girion, concerning or relating to J&J, J&J Talcum Powder Products, asbestos, Dr. David Egilman, or the Reuters Articles.

3. Documents sufficient to reflect Your document retention or destruction policies or procedures.

(Ex. 2 at 4; Docket Entry No. 5-2 in Civil Action No. 21-20040).

Finally, the subpoenas issued to the Smith Firm and Smith seek:

1. All Communications, including any correspondence or Documents exchanged, between The Smith Law Firm[/You], and any Media Organization, including Reuters and Lisa Girion, concerning or relating to Johnson & Johnson, J&J Talcum Powder Products, asbestos, Dr. David Egilman, Dr. William Longo, or the Reuters Articles.

2. All notes, transcripts, memoranda, documents, and uncut recordings (whether visual, audio, or otherwise) concerning any Communications, discussions, or interviews between The Smith Law Firm and any Media Organization, including Reuters and Lisa Girion, concerning or relating to Johnson & Johnson, J&J Talcum Powder Products, asbestos, Dr. David Egilman, Dr. William Longo, or the Reuters Articles.

3. Documents sufficient to reflect Your document retention or destruction policies or procedures.

(Exs. 1 and 2 at 4; Docket Entry Nos. 1-1 and 1-2 in Civil Action No. 22-658).

The non-parties raise several arguments in support of their motions to quash, arguing that the information being sought is protected by the First Amendment, claiming that enforcing the subpoenas would impose an undue burden on them, contending that the information sought is not relevant, and arguing that J&J is improperly targeting attorneys who continue to litigate personal injury cases against it.

J&J, however, claims that the subpoenas are not being pursued for an improper purpose, seek relevant information that is proportional to the needs of the underlying *Hall* case, and not protected by the First Amendment. Further, J&J argues that if the Court finds some aspect of the subpoenas to be objectionable, the subpoenas should not be quashed, but instead modified.

## II.     Analysis

In determining whether the aforementioned subpoenas should be quashed, enforced or modified, the Court begins by examining whether the discovery sought through the subpoenas falls within the permissible scope of discovery in federal litigation. *See OMS Investments, Inc. v. Lebanon Seaboard Corp.*, Civil Action No. 08-261 (AET), 2008 WL4952445, *2 (D.N.J. Nov. 18, 2008); *Schmulovich v. 1161 Rt. 9 LLC*, Civil Action No. 07-597 (FLW), 2007 WL 2362598, *2 (D.N.J. Aug. 15, 2007) (citing *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D.Kan. 2003) (holding that "Rule 45 subpoena served in conjunction with discovery must fall within the scope of proper discovery under FED.R.CIV.P. 26(b)(1).") FED.R.CIV.P. ("Rule") 26(b) governs the scope of discovery in federal litigation.

Pursuant to Rule 26(b)(1), the scope of permissible discovery is as follows: "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Further, Rule 26(b)(1) makes clear that information within the scope of permissible discovery "need not be admissible in evidence to be discoverable." *Id*. While the scope of permissible discovery is, therefore, broad, it also clearly does have its limits. Moreover, because Levy, Maimon, Hobson & Bradley, Longo, the Smith Firm, and Smith are non-parties, they are afforded greater protection from discovery than a normal party. *See Laxalt v. McClathy*, 116 F.R.D. 455, 458 (D.Nev. 1986). In fact, "the standards for nonparty discovery require a stronger showing of relevance than for simple party discovery." *Stamy v. Packer*, 138 F.R.D. 412, 419 (D.N.J. 1990).

If a subpoena falls outside the scope of discovery permitted by Rule 26(b)(1), then, upon a timely motion, the Court has authority to quash or modify same. Rule 45(d)(3). Indeed, the Court must quash or modify a subpoena that "subjects a person to undue burden." Rule 45(d)(3)(A)(iv). In addition, all discovery is subject to the limitations imposed by Rule 26(b)(2)(C). Finally, as always, the Court has broad discretion in managing requests for discovery and determining the appropriate scope of discovery. *See United States v. Washington*, 869 F.3d 193, 220 (3d Cir. 2017) (noting that "[a]s we have often said, matters of docket control and discovery are committed to [the] broad discretion of the district court"); *Halsey v. Pfeiffer*, Civil Action No. 09-1138, 2010 WL 3735702, at *1 (D.N.J. Sept. 17, 2010) (noting that "[d]istrict courts provide magistrate judges with particularly broad discretion in resolving discovery disputes"); *Gerald Chamles Corp. v. Oki Data Americas, Inc.*, 247 F.R.D. 453, 454 (D.N.J. 2007) (stating that it is "well-settled that Magistrate Judges have broad discretion to manage their docket and to decide discovery issues[.]")

Further, J&J bears the burden of establishing that the subpoenaed information is relevant. If this showing is made, then the burden shifts to the non-parties to establish that regardless of its relevance, the subpoenaed discovery should be disallowed. *See Gould v. O'Neal*, Civil Action No. 17-100 (JMV), 2019 WL 4686991, at *4 (D.N.J. Sept. 26, 2019) (stating that once court determines that subpoenaed information was "relevant, the burden shifts to [non-party] to explain why discovery should not be permitted"[;] *see also Ugorji v. Dep't of Env't Prot. of the State of New Jersey*, Civil Action No.: 08-5424 (MLC), 2011 WL 13140574, at *2 (D.N.J. Oct. 27, 2011) (noting that party seeking enforcement of subpoena bears burden of establishing relevancy of information sought while objector bears burden of establishing privacy interest or privilege over subpoenaed information).

6

As outlined in J&J's opposition to the non-parties' motions to quash:

> To prevail on its securities fraud claims, Plaintiff must prove, among other things, a material misrepresentation, reliance, and loss causation. In particular, Plaintiff must prove that a statement was false or misleading and "that the fraudulent misrepresentation . . . actually caused the economic loss suffered." To do this, Plaintiff must demonstrate that the economic loss was caused by the revelation of some fraud-related fact rather than some non-fraud-related change in circumstances. And here, because Plaintiff is relying on the "efficient market" hypothesis to establish reliance, which assumes that all public information about a company is promptly incorporated into the stock price, Plaintiff must demonstrate that the fraud-related fact allegedly being revealed is actually *new* – i.e., that the allegedly "corrective" information had not been previously disclosed.

(J&J Consol. Op. in Civil Action No. 18-1833 at 6-7 (citations omitted); Docket Entry No. 131).[1] Thus, to be discoverable, the information sought in the subpoenas at issue must be relevant to the aforementioned inquiry.

In arguing that the information sought is relevant, J&J focuses on the fact that the *Reuters* article and other "media reports about the product liability litigation are central to Plaintiff's theory of the fraud" asserted in the *Hall* matter. (*Id*. at 10). That, though, appears to be largely undisputed. Certainly, the media reports are relevant. Indeed, as J&J notes, "Plaintiff contends that these media reports 'revealed' the alleged fraud by releasing new information that 'corrected' Defendants' prior statements and thereby proximately caused investor losses." (*Id*.) The Court appreciates J&J's argument that if the "corrective disclosures" at issue, including the *Reuters* article, "did not actually disclose any new facts about the purported fraud, then the stock price decline was necessarily not fraud-related and Plaintiff cannot prove reliance or loss causation under the

---

[1] J&J's oppositions to the non-parties' motions to quash are near identical. As such, going forward, unless otherwise stated, the Court cites to the consolidated opposition filed in the *Hall* matter as a representative example.

7

efficient market hypothesis." (*Id*. at 11). The issue, however, is that through the subpoenas, J&J is not attempting to obtain all media reports claimed by Plaintiff to be a "corrective disclosure" and/or the documents cited in the media reports. Instead, J&J is attempting to obtain discovery of non-public statements made by attorneys or their experts involved in product liability litigation against J&J. None of the arguments raised by J&J establishes how non-public statements made by said attorneys or their experts impacts whether new facts were actually disclosed in the media reports identified as "corrective disclosures." Further, J&J cites no pertinent caselaw supporting its theory that such non-public statements are relevant.

While J&J contends that discovery concerning the influence product liability lawyers and/or their experts had over the alleged "corrective disclosures" is relevant to the three elements of Plaintiff's securities fraud claim – falsity, reliance, and loss causation – its conclusory statement to this effect does not make it so. Instead, it is hard to see what bearing non-public statements made by the product liability lawyers and/or their experts have on (1) the veracity of J&J's statements; (2) whether the information outlined in the alleged "corrective disclosures" is true; or (3) whether the information set forth in the "corrective disclosures" is new. And, again, J&J fails to cite a single case requiring similar discovery under analogous circumstances.

As a result, the Court finds that J&J has failed to establish the relevance of the discovery sought in their subpoenas. While not part of its analysis, the Court's findings are also bolstered by the fact that J&J has not, as certain of the non-parties note, sought discovery from all counsel involved in the talc litigation against J&J. If the discovery was as critical as J&J suggests, the Court would have expected a less selective issuance of subpoenas. Given the lack of relevance, modifying the subpoenas would serve no purpose. As such, the Court grants the motions to quash in full. To the extent J&J does not already have access to the media reports claimed to be

8

"corrective disclosures" as well as the documents cited therein, the Court encourages J&J to request that Plaintiff in the *Hall* matter identify and produce same.

### III.     Conclusion

For the reasons stated above, the non-parties' motion to quash is GRANTED. An appropriate Order follows.

April 29, 2022

s/ Tonianne J. Bongiovanni
**TONIANNE J. BONGIOVANNI**
**United States Magistrate Judge**
