Jack N. Frost, Jr. Esq.
**FAEGRE DRINKER**
**BIDDLE & REATH LLP**
600 Campus Drive
Florham Park, NJ 07932
(973) 549-7338
jack.frost@faegredrinker.com

*Counsel for Defendants*

[Additional counsel appear on signature page]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FRANK HALL, individually and on behalf of all others similarly situated, | No. 3:18-CV-01833-ZNQ-TJB |
| Plaintiff, | Hon. Zahid N. Quraishi |
| v. | Hon. Tonianne J. Bongiovanni |
| JOHNSON & JOHNSON et al., | |
| Defendants. | |

# DEFENDANTS' REPLY IN SUPPORT OF THEIR SECOND MOTION TO SUPPLEMENT THE CLASS CERTIFICATION RECORD

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

ARGUMENT ........................................................................................1

I. The Declarations Prove That The February 2018 Alleged Corrective Disclosures Contained No New Information And Therefore Could Not Have Impacted J&J's Stock Price. ........................................................1

II. Plaintiff's Procedural Timeliness Arguments Are Contrary To Black Letter Class Certification Law. ........................................................8

CONCLUSION ........................................................................................11

## TABLE OF AUTHORITIES

**Cases** **Page(s)**


*Astrazeneca AB v. Mut. Pharm. Co.*,
278 F. Supp. 2d 491 (E.D. Pa. 2003), *aff'd*, 384 F.3d 1333 (Fed. Cir. 2004)....10

*Bach v. McGinty*,
2015 WL 1383945 (D.N.J. Mar. 25, 2015) ....................................................10

*Barton v. RCI, LLC*,
2014 WL 12633500 (D.N.J. Mar. 17, 2014) ....................................................10

*Bayshore Ford Truck v. Ford Motor Co.*,
2010 WL 415329 (D.N.J. Jan. 29, 2010)..........................................................9

*Eagle View Techs., Inc. v. Xactware Sols., Inc.*,
2018 WL 2464499 (D.N.J. May 31, 2018).......................................................10

*EP Medsystems, Inc. v. Echocath, Inc.*,
235 F.3d 865 (3d Cir. 2000) ..........................................................................7

*Eshun v. Welsh*,
2018 WL 3455684 (M.D. Pa. July 28, 2018) ...................................................10

*Franco v. Conn. Gen. Life Ins. Co.*,
2013 WL 5934539 (D.N.J. Nov. 1, 2013) .......................................................10

*Freeland v. Iridium World Communications, Ltd.*,
545 F. Supp. 2d 59 (D.D.C. 2008)..................................................................7

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*,
141 S. Ct. 1951 (2021).........................................................................3, 4, 7

*Hull v. Glob. Digit. Sols., Inc.*,
2017 WL 6493148 (D.N.J. Dec. 19, 2017).......................................................2

*In re Allstate Corp. Sec. Litig*,
966 F.3d 595 (7th Cir. 2020) .........................................................................3

*In re Qualcomm Inc. Sec. Litig.*,
2023 WL 2583306 (S.D. Cal. Mar. 20, 2023) ..........................................3, 4, 7

*In re Res. Am. Sec. Litig.*,
202 F.R.D. 177 (E.D. Pa. 2001)....................................................................2

*In re Signet Jewelers Ltd. Sec. Litig.*,
2019 WL 3001084 (S.D.N.Y. July 10, 2019)....................................................2

*Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*,
877 F.3d 687 (6th Cir. 2017) ........................................................................2

*Pettis v. Everhart*,
2020 WL 5548723 (M.D. Pa. Sept. 16, 2020)..................................................10

*Public Employees' Retirement System of Mississippi v. Amedisys, Inc.*,
769 F.3d 313 (5th Cir. 2014) ........................................................................6

*Procopio v. Crown Atl. Co.*,
555 F. Supp. 3d 186 (E.D. Pa. 2021)..............................................................10

*Veverka v. Royal Caribbean Cruises Ltd.*,
649 F. App'x 162 (3d Cir. 2016) ..................................................................11

*Weil v. Metal Techs., Inc.*,
925 F.3d 352 (7th Cir. 2019) ........................................................................8

*Zenith Labs., Inc. v. Carter-Wallace, Inc.*,
530 F.2d 508 (3d Cir. 1976) ......................................................................8, 9

**Other Authorities**

Fed. R. Civ. P. 26(e)(1).................................................................................11

Fed. R. Civ. P. 23(c)(1)(C) .........................................................................8, 9

Fed. R. Civ. P. 6(b)(1)(B) ...............................................................................9

# INTRODUCTION

Defendants' Second Motion to Supplement the Class Certification Record submitted declarations by the authors of the February 5 and February 7, 2018, alleged corrective disclosures, respectively the Oppenheimer Declaration and the Meadows Declaration. (ECF 192, "Motion" or "Mot.") Those Declarations testify to – and conclusively prove – a critical fact: ***that both alleged corrective disclosures were based entirely on public information***. (Mot. Exs. A & B.) Plaintiff's Opposition does not dispute that fact. (ECF 197, "Opposition" or "Opp.") This is fatal to class certification because it means that neither February 2018 alleged corrective disclosure revealed ***new*** information.

The Opposition cannot avoid the pivotal consequences of these Declarations. Indeed, Plaintiff's choice to spend the first 11 pages of its argument on a patently meritless procedural point about timing highlights how substantively damaging the Declarations are to Plaintiff's position. The Court should grant Defendants' Motion, consider the Declarations, and deny class certification in full.

# ARGUMENT

## I. The Declarations Prove That The February 2018 Alleged Corrective Disclosures Contained No New Information And Therefore Could Not Have Impacted J&J's Stock Price.

The Declarations are sworn testimony from the authors of the February 5 and February 7, 2018, alleged corrective disclosures. The Oppenheimer Declaration testifies that the February 5, 2018, Mesothelioma.net blog post

described the "then-ongoing [*Lanzo*] trial" against J&J and "was based entirely on public information gleaned from conducting internet searches." (Mot. Ex. A ¶ 4.) The Meadows Declaration testifies that "[n]one of the statements in the [February 7, 2018,] Beasley Allen press release reflected, or were based on, any documents or information that were not publicly available before the publication of the press release." (Mot. Ex. B ¶ 3.) This is definitive evidence that the disclosures did not reveal any new information. (Mot. 1-3.)

That is critical to class certification in this securities case. Plaintiff and Defendants agree that under the efficient market hypothesis relied on by Plaintiff, only *new* information can affect the stock price; repackaging of information that was already public cannot have any price impact. (*See, e.g.,* ECF 181, Defs. Class Cert. Opp. 33-34 (citing testimony from Plaintiff's and Defendants' experts).)[1] Because the Declarations prove that the February 5 and February 7, 2018, alleged

[1] Cases cited in the Opposition reiterate that only new information can have price impact. *See, e.g., In re Res. Am. Sec. Litig.*, 202 F.R.D. 177, 189-91 (E.D. Pa. 2001) (determining whether alleged corrective disclosure "was *new information*, to which the market responded"); *Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*, 877 F.3d 687, 695 (6th Cir. 2017) ("Of course, for the revelation to cause the plaintiffs' losses, *the information must in a practical sense be new*; otherwise the market will have processed and reacted to that information already."); *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at *19 (S.D.N.Y. July 10, 2019) (limiting class period because certain alleged corrective disclosures did not reveal any new information to the market); *Hull v. Glob. Digit. Sols., Inc.*, 2017 WL 6493148, at *14 (D.N.J. Dec. 19, 2017) ("[A] 'corrective disclosure' . . . *must reveal new information* to the market.") (cited in Opp. 16-18, all emphases added).

corrective disclosures merely repeated already-public information, they could not have impacted J&J's stock price and certification is not proper. *See, e.g.*, *In re Qualcomm Inc. Sec. Litig.*, 2023 WL 2583306, at *13 (S.D. Cal. Mar. 20, 2023) (rejecting class certification because defendants "demonstrate[d] a lack of price impact" on claims where "[t]he alleged corrective disclosures only repeated already public information"). (*See also* ECF 181, Defs. Class Cert. Opp. 21-23.)

Plaintiff's Opposition does not challenge the Declarations' statements that both corrective disclosures were based entirely on already-public information. Instead, the Opposition makes three core arguments in a vain attempt to evade or obfuscate the implications of that undisputed fact.

*First*, Plaintiff argues that the Declarations don't matter because J&J's stock price declined on February 5 and February 7, 2018, and therefore there must have been new information in the alleged corrective disclosures. (Opp. 14, 17-18, 22-23.) But the Supreme Court's 2021 *Goldman* decision put to rest this long-standing plaintiff argument that the bare fact of a statistically significant price drop is determinative of price impact. *Goldman* vacated certification despite a statistically significant price drop, holding that, "in assessing price impact at class certification, courts should be open to *all* probative evidence on that question – qualitative as well as quantitative." *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1960 (2021) (Barrett, J.) (internal quotation marks omitted); *see also In*

*re Allstate Corp. Sec. Litig*, 966 F.3d 595, 612 (7th Cir. 2020) (Hamilton, J., joined by Barrett & Kanne, JJ.) ("[P]rice *reaction* (the simple movement of the price in response to a given statement) is quite different from the legal concept of price *impact*.").[2] Plaintiff unsurprisingly does not cite *Goldman* or any class certification cases decided after it. *Cf., e.g.*, *Qualcomm*, 2023 WL 2583306, at *13 (citing *Goldman* and denying certification despite a statistically significant stock drop where the corrective disclosures "repeated already public information").

*Second*, the Opposition claims that, regardless of what the authors of the Declarations said, *Plaintiff* has identified specific information in the disclosures that was not already public. (Opp. 17, 22.) But the quotes Plaintiff points to only underscore the lack of new information in either disclosure.

For the February 5, 2018, Mesothelioma.net blog post, Plaintiff identifies one quote that allegedly revealed new information: "experts [were] anticipating the release of numerous damaging internal [J&J] documents" during the *Lanzo* trial, which had started on January 29, 2018. (*Id.* at 17.) That is not new information. It

---

[2] Plaintiff relatedly asserts that the disclosures must have contained new information because Defendants have not yet briefed alternative explanations for the price declines. (Opp. 14.) But the materials Plaintiff cites identify alternative explanations. (*See, e.g.,* Opp. Ex. 7 at 5 (February 5, 2018, email pointing to "rising bond yields . . . and hints of inflation pickup trigger[ing] concerns that the Federal Reserve might have to raise interest rates more quickly."). And contrary to Plaintiffs' innuendo, none of the cited materials say or even suggest that the disclosures contained new information. (*See, e.g.,* Opp. Exs. 4-6, 10-14.)

is, as the blog post's author explained, a generic regurgitation of plaintiffs' counsel's characterizations of evidence in *Lanzo*, based on "internet searches" about the trial. (Mot. Ex. A ¶¶ 4-5 (identifying "media reports on *Lanzo*" as a source for the post).) That trial – including plaintiffs' counsel's opening statement describing the evidence expected to be introduced – was livestreamed on Courtroom View Network and covered extensively in the media. (*See* ECF 181, Defs. Class Cert. Opp. 42.) Indeed, one of the other alleged corrective disclosures in this securities case was a January 30, 2018, *Law360* article that also covered plaintiffs' counsel's characterizations of the expected evidence in *Lanzo*. (ECF 33, First Am. Compl. ¶ 192.) Plaintiff's attempt to manufacture something new in the Mesothelioma.net blog post falls flat.

For the February 7, 2018, Beasley Allen press release, Plaintiff also identifies the specific quotes it contends contained allegedly new information: "talc lawsuits . . . 'are revealing never-before-seen documents'" from "'a dramatic increase in document production' from J&J"; those documents "reveal more hidden information" and "shed light" on alleged contamination in Johnson's Baby Powder, "reveal . . . cancer links," and "show J&J's 'response to growing concerns about cancer risks'"; and this information is "highly relevant to [Beasley Allen's] claims" against J&J in product liability litigation. (Opp. 22.) None of this was new either. The press release did not itself "reveal[]" any "never-before-seen

documents," or any information from "never-before-seen documents," and Plaintiff notably does not contend otherwise. Nor could it, because the Meadows Declaration states that nothing in the Press Release "reflected, or [was] based on, any documents or information that were not publicly available." (Mot. Ex. B ¶ 3.) The Opposition thus boils down to a claim that self-serving posturing and bluster by product liability plaintiffs' lawyers was new corrective information. That is not true, and the law should not allow such a result.[3]

*Finally*, Plaintiff mischaracterizes the Declarations. For example, Plaintiff argues the Declarations "say little more than that [the authors] did not disclose confidential J&J documents or information in violation of any protective order." (Opp. 16.) Not true. (Mot. Ex. A ¶¶ 4-5 (declaring the Mesothelioma.net blog post was "based entirely on public information gleaned from conducting internet searches," and the author "did not have any information or documents that were confidential or non-public"); Mot. Ex. B ¶ 3 (declaring that "[n]one of the

[3] Plaintiff's citation to *Public Employees' Retirement System of Mississippi v. Amedisys, Inc.*, offers Plaintiff no assistance. (Opp. 15.) In *Amedisys*, the court considered, at the motion to dismiss stage, whether it was "plausible" that the market had not "readily digest[ed]" the "hidden meaning" of "raw," "complex" Medicare data that had "little to no probative value in its native state" and "required expert analysis" to understand. 769 F.3d 313, 323 (5th Cir. 2014). Here, by contrast, the Court can consider evidence at class certification, and none of the allegedly corrective information in the February 2018 alleged corrective disclosures is complex data that requires expert analysis. Plaintiff does not even attempt to argue otherwise.

statements in the Beasley Allen press release reflected, or were based on, any documents or information that were not publicly available.").)

Plaintiff also argues that the Declarations are limited because they do not identify where the information in the disclosures was previously disclosed. (Opp. 23.) Also not true. (Mot. Ex. A ¶¶ 4, 5 (stating that the Mesothelioma.net blog post was based on public information from "internet searches," "public trials (like *Lanzo*), published media reports (including media reports on *Lanzo*), posted on J&J's own website, or otherwise public forums"); Mot. Ex. B ¶ 3 (stating that the statements in the Beasley Allen press release were from "public trials, on J&J's own website, or in other public forums.").)[4]

The Declarations unequivocally prove that neither February 2018 disclosure contained any *new* corrective information.

---

[4] As a last ditch argument, Plaintiff suggests that whether an alleged corrective disclosure contained new corrective information must be categorically reserved for the jury. (Opp. 15.) That is wrong. *See*, *e.g.*, *Qualcomm*, 2023 WL 2583306, at *13 (denying certification because "[t]he alleged corrective disclosures only repeated already public information"). Plaintiff's citations don't support the point, and not only because they predate the Supreme Court's price impact holdings in *Halliburton* and *Goldman*. *Freeland v. Iridium World Communications, Ltd.* unremarkably stated only that the record presented at summary judgment in that case was not clear enough to make the determination as a matter of law. 545 F. Supp. 2d 59, 80 (D.D.C. 2008). And in *EP Medsystems, Inc. v. Echocath, Inc.*, the Court noted that the case presented unique facts that "differ[] from the usual securities action," and relatedly emphasized that its holding was "to some extent inapplicable" to the "usual securities action." 235 F.3d 865, 884 (3d Cir. 2000).

## II. Plaintiff's Procedural Timeliness Arguments Are Contrary To Black Letter Class Certification Law.

The Opposition argues at length that the Declarations are untimely and should be excluded from the Court's consideration of class certification. (Opp. 2-12.)[5] This is nonsense. It is well-established that new evidence relevant to class certification can and should be considered any time prior to final judgment.

Federal Rule of Civil Procedure 23(c)(1)(C) states that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Courts have long recognized that this means new evidence relevant to class certification can and should be considered at any time before final judgment. (*See* Mot. 5-6.) As the Third Circuit instructed nearly 50 years ago:

> [A] district court is obliged to take cognizance of a changed factual situation and may alter an earlier [certification] order accordingly. Moreover, the Committee Notes on Rule 23 envision modification of a class certification if, upon fuller development of the facts, the original determination appears unsound.

*Zenith Labs., Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508, 512 (3d Cir. 1976) (cleaned up); *see also, e.g., Weil v. Metal Techs., Inc.*, 925 F.3d 352, 357 (7th Cir. 2019) ("Rule 23 grants courts the discretion to reconsider certification at any point

[5] This is a change in Plaintiff's position. In response to Defendants' first motion to supplement the class certification record, Plaintiff submitted its own new evidence and said only in a short footnote that the Court "would be within its discretion" to disregard Defendants' new evidence as untimely. (ECF 190 at 2 n.4.)

before final judgment."); *Bayshore Ford Truck v. Ford Motor Co.*, 2010 WL 415329, *7 (D.N.J. Jan. 29, 2010) ("[N]ew evidence . . . supports the need for a re-examination of whether continued class treatment is proper.").[6]

Indeed, Plaintiff's position makes no sense as a practical matter. The Declarations' implications for class certification will be presented to the Court at some point. If a class including the February 2018 disclosures is certified without addressing the Declarations, Defendants will move to decertify the class. And there can be no dispute that such a motion to decertify based on evidence obtained during fact discovery would be proper and timely. Plaintiffs' position here would simply waste the Court's and the parties' time and resources.

The Opposition's arguments do not help Plaintiff. Plaintiff relies on Rule 6(b)(1)(B), which covers instances where an action "must be done within a specified time" but a party "failed to act." That Rule does not apply here, as the only time limit on presenting new evidence relevant for the class-certification inquiry is final judgment. Fed. R. Civ. P. 23(c)(1)(C). Notably, *none* of the

---

[6] Plaintiff argues that Defendants' reliance on *Zenith* is "misplaced" because there, "events occurred after a class was certified that required its decertification," but "[h]ere, no new events have occurred." (Opp. 12.) *Zenith*'s principle is not so limited, and the decision specifically referenced "fuller development of the facts." 530 F.2d at 512. The factual record in this case has changed since Defendants' filed their opposition to class certification, and *Zenith* is clear guidance that new evidence showing certification is "unsound" should not be ignored. *Id.*

timeliness decisions Plaintiff cites involve class certification. (Opp. 9-11.)[7]

Plaintiff also suggests Defendants have "contradict[ed] their own assurances" to the Court by introducing new evidence. (*Id.* 4-6.) There is no contradiction. Plaintiff points to Defendants' April 2, 2021, request for leave to file a sur-reply brief that would not raise new arguments or facts. (*Id.* (citing ECF 101).) Defendants' sur-reply was fully consistent with that representation. (*See* ECF 184.) Defendants did not represent that they would *never* raise new arguments or new evidence relating to class certification.

Finally, Plaintiff's suggestion that the Declarations should be excluded because Defendants were dilatory has no basis in law. (Opp. 2-11.) The cases cited by Plaintiff involved evidence obtained after the close of discovery.[8] But

---

[7] *See Eagle View Techs., Inc. v. Xactware Sols., Inc.*, 2018 WL 2464499, at *3 (D.N.J. May 31, 2018) (regarding motion for extension of time to amend pleadings); *Procopio v. Crown Atl. Co.*, 555 F. Supp. 3d 186, 188 (E.D. Pa. 2021) (regarding motion to remand case after statutory removal deadline had passed); *Bach v. McGinty*, 2015 WL 1383945, at *3 (D.N.J. Mar. 25, 2015) (motion to extend deadline to file motion for summary judgment); *Eshun v. Welsh*, 2018 WL 3455684, at *2 (M.D. Pa. July 28, 2018) (motion for leave to reopen fact discovery); *Pettis v. Everhart*, 2020 WL 5548723, at *3 (M.D. Pa. Sept. 16, 2020) (motion for extension of time to respond to motion to dismiss); *Barton v. RCI, LLC*, 2014 WL 12633500, at *3 (D.N.J. Mar. 17, 2014) (motion to allow two additional depositions after fact discovery had closed).

[8] *See Franco v. Conn. Gen. Life Ins. Co.*, 2013 WL 5934539, at *2-3 (D.N.J. Nov. 1, 2013) (excluding new expert reports submitted nearly three years after the close of all expert discovery); *Astrazeneca AB v. Mut. Pharm. Co.*, 278 F. Supp. 2d 491, 493, 506-09 (E.D. Pa. 2003) (excluding evidence revealed for the first time in

Defendants obtained the Declarations while fact discovery was open, and filed their Motion within a week of obtaining them. (*See* Mot. 1-3.) Plaintiff also chides Defendants for not including the declarants in their Rule 26(a) initial disclosures or yet amending those disclosures. (Opp. 11 n.9.) But a party can seek discovery from persons not in their initial disclosures, and supplementation is only necessary "if the additional . . . information has not otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e)(1); *Veverka v. Royal Caribbean Cruises Ltd.*, 649 F. App'x 162, 166 (3d Cir. 2016). Defendants gave Plaintiff notice of the subpoenas on July 28, 2021 (Meadows) and February 11, 2022 (Mesothelioma.net). And of course Plaintiff has the Declarations now and fact discovery has not closed. Defendants have not breached any deadline and Plaintiff has suffered no prejudice.[9]

## CONCLUSION

For these reasons, Defendants respectfully request that the Court grant Defendants' Motion, consider the Oppenheimer and Meadows Declarations, deny certification of claims based on the February 5 and February 7, 2018, alleged

---

summary judgment briefing, months after discovery had closed), *aff'd*, 384 F.3d 1333 (Fed. Cir. 2004).

[9] To that point, Defendants do not oppose Plaintiff's request for discovery of the declarants Oppenheimer and Meadows, or its request for additional expert discovery related to class certification (Opp. 9-10, 12), so long as Defendants are permitted to participate equally in any such discovery.

corrective disclosures, and deny Plaintiff's motion for class certification in full for the additional reasons stated in Defendants' prior class certification briefing.

Dated: June 16, 2023

Respectfully Submitted,

/s/ *Jack N. Frost, Jr.*
Jack N. Frost, Jr.
**FAEGRE DRINKER BIDDLE & REATH LLP**
600 Campus Drive
Florham Park, NJ 07932
(973) 549-7338
jack.frost@faegredrinker.com

Walter C. Carlson (*pro hac vice*)
Kristen R. Seeger (*pro hac vice*)
John M. Skakun III (*pro hac vice*)
Christopher Y. Lee (*pro hac vice*)
Neil H. Conrad (*pro hac vice*)
Abigail B. Molitor (*pro hac vice*)
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000
wcarlson@sidley.com
kseeger@sidley.com
jskakun@sidley.com
chris.lee@sidley.com
nconrad@sidley.com
amolitor@sidley.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I, Jack N. Frost, hereby certify that on June 16, 2023, I caused the foregoing **Defendants' Reply in Support of Their Second Motion to Supplement the Class Certification Record** to be filed electronically using CM/ECF, which will effect service to the registered counsel for Lead Plaintiff below:

James E. Cecchi (jcecchi@carellabyrne.com)
**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
(973) 994-1700

Robert R. Henssler Jr. (bhenssler@rgrdlaw.com)
Nathan R. Lindell (nlindell@rgrdlaw.com)
Hillary B. Stakem (hstakem@rgrdlaw.com)
Matthew J. Balotta (mbalotta@rgrdlaw.com)
Laura Andracchio (landracchio@rgrdlaw.com)
Joseph J. Tull (jtull@rgrdlaw.com)
**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058

Dated: June 16, 2023

/s/ *Jack N. Frost, Jr.*
Jack N. Frost, Jr.