CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO, P.C.
JAMES E. CECCHI
5 Becker Farm Road
Roseland, NJ 07068
Telephone: 973/994-1700
973/994-1744 (fax)

Local Counsel

[Additional counsel appear on signature page.]

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FRANK HALL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>JOHNSON & JOHNSON, et al.,<br><br>Defendants. | No. 3:18-cv-01833-ZNQ-TJB<br><br><u>CLASS ACTION</u><br><br>PLAINTIFF'S RESPONSE TO DEFENDANT JOHNSON & JOHNSON'S MOTION FOR RECONSIDERATION OF THE COURT'S RULING ON THE MOTIONS TO QUASH SUBPOENAS |

Plaintiff San Diego County Employees Retirement Association ("plaintiff") respectfully submits this response to defendant Johnson & Johnson's ("J&J" or the "Company") Motion for Reconsideration of the Court's Ruling on the Motions to Quash Subpoenas (ECF 198) (the "Motion" or "Mtn.").[1] While plaintiff takes no position on the motions to quash, it is compelled to respond to J&J's Motion because J&J inappropriately presents lengthy argument (and misrepresentations) concerning the class certification record. Mtn. at 6-8, 11-15. Rather than simply address the Court's Memorandum Opinion (ECF 162) regarding the motions to quash, J&J seizes the opportunity to proclaim that its purported "new evidence" consisting of three declarations somehow "shows that the alleged corrective disclosures did not reveal (a) any new information or (b) any objective 'truth.'" Mtn. at 11.[2] But as explained below and in plaintiff's oppositions to defendants' motions to supplement the class certification record, J&J's "new evidence" shows nothing of the sort. ECF 190, 197.

**The *Reuters* Report**

On December 14, 2018, *Reuters* published a lengthy investigative report entitled: "Powder Keg: Johnson & Johnson knew for decades that asbestos lurked in its Baby Powder," with a companion piece entitled: "A guiding hand on talc safety

---

1 Defendants are J&J, Alex Gorsky, Carol Goodrich, Joan Casalvieri and Tara Glasgow (collectively, "defendants").

2 Unless otherwise noted, all citations are omitted and emphasis is added throughout.

research" (collectively, the "*Reuters* Report"). ECF 33, ¶¶223, 232. The *Reuters* Report directly refuted defendants' fraudulent statements and contained new information and new analysis undermining defendants' false denials. *Id.*, ¶¶223-233. In response, J&J's stock price plummeted 10%, causing a staggering ***$40 billion*** drop in J&J's market capitalization. *Id.*, ¶¶233-234, 243. Defendants' own expert ***admitted*** this stock price decline was statistically significant, failed to identify ***any other cause*** for the stock drop, and ***admitted*** that the *Reuters* Report revealed new information. *See* ECF 183 at 14-16; ECF 190 at 2, 7. These facts are fatal to any attempt by defendants to "prove[] a ***complete lack of price impact***" in connection with the *Reuters* Report disclosure. *Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 393-95 (N.D. Ga. 2019).[3] And none of the evidence defendants now seek regarding communications with media organizations can change that outcome.

[3] *See also In re CenturyLink Sales Pracs. & Sec. Litig.*, 337 F.R.D. 193, 210-11 (D. Minn. 2020) (finding defendants were "unable to rebut evidence of back-end price impact" where their expert "admit[ted] that there were statistically significant price drops following . . . the . . . disclosure dates" and did not "attempt to quantify the amount of the price drop that was caused by other factors"); *Thorpe v. Walter Inv. Mgmt., Corp.*, 2016 WL 4006661, at *13 (S.D. Fla. Mar. 16, 2016) ("To rebut the presumption of reliance, Defendants must demonstrate that the corrective disclosures played ***no part*** in the decline in the Company's share price."); *Plymouth Cnty. Ret. Sys. v. Patterson Cos., Inc.*, 2020 WL 5757695, at *13 (D. Minn. Sept. 28, 2020) ("Defendants bear the burden of presenting evidence to show 'that the entire price decline on the corrective-disclosure dates was due to something other than the corrective disclosures.'").

In its Motion, J&J rehashes its flawed argument that the Declaration of Mark Lanier, dated December 20, 2021 (ECF 141-1) (the "Lanier Declaration") (submitted with Defendants' Motion to Supplement the Class Certification Record (ECF 141)), somehow shows that the *Reuters* Report disclosed no new corrective information. Mtn. at 11. But as plaintiff pointed out previously, the Lanier Declaration fails to identify any previous public disclosure of even ***a single piece of information*** from the *Reuters* Report. ECF 190 at 4 n.7, 5.[4] J&J ignores this fatal fact, mischaracterizing plaintiff's argument as being that "some allegedly 'new and corrective information'" in *Reuters* "***could*** have been based on 'other sources.'" Mtn. at 12. Plaintiff actually argued that defendants' assertion concerning the Lanier Declaration was "disingenuous at best" because numerous pieces of corrective information in the *Reuters* Report were ***explicitly*** from sources other than Mr. Lanier. ECF 190 at 2-4. These facts included, for example:

---

[4] J&J claims that plaintiff did not argue that the Lanier Declaration was "categorically irrelevant." Mtn. at 12. While plaintiff's response to defendants' proffer of the Lanier Declaration did not explicitly use the word "irrelevant," plaintiff set forth numerous reasons why the Lanier Declaration is irrelevant here, including the Lanier Declaration's failure to: (1) identify any previous disclosure of even a single piece of information from the *Reuters* Report; (2) address the numerous pieces of new and corrective information in the *Reuters* Report identified by plaintiff; (3) address the testimony of Dr. Feinstein that the *Reuters* Report revealed new and corrective information and caused the statistically significant price decline on December 14, 2018; and (4) address the admission by defendants' own expert that the *Reuters* Report revealed new information to the market.

- Dr. Arthur Langer, a mineralogist who had found asbestos in Johnson's Baby Powder, told *Reuters* he "was visited by J&J lawyers in 2017 (during the Class Period), and told them 'that he stood by all of his findings.'" ECF 183 at 26.

- J&J's lawyer told *Reuters* that even today, "J&J's X-ray scanning for asbestos testing can only 'detect suspect minerals at levels as low as 0.1 percent.'" *Id.*

- Jerome Kretchmer, former New York City environmental protection chief, "told *Reuters* that when he 'recently read that a jury had concluded that Baby Powder was contaminated with asbestos,' he said to himself: "'How come it took so long?"'" *Id.*

- Then "FDA Commissioner Scott Gottlieb told *Reuters* that he "'recognize[s] the concern'" about talc and that 'the agency's policing of cosmetics in general – fewer than 30 people regulating a "vast" industry – was "a place where we think we can be doing more."'" *Id.*

- The FDA also "told *Reuters* that the agency was going to be looking at "'scientific test methods for assessment of asbestos'" and "'how [the agency] would develop standards for evaluating any potential risk."'" *Id.*

- *Reuters* inquired with the American Cancer Society ("ACS") "concerning asbestos in talc, and as a result, the ACS revised its website to say that cosmetic talc products in the United States "'should be free from detectable amounts of asbestos,'" rather than saying that cosmetic talcs are asbestos-free." *Id.* at 27.

Notably, J&J also glaringly ignores the Second Declaration of Mark Lanier, dated December 30, 2021 (attached as Exhibit 1 to Plaintiff's Response to Defendants' Motion to Supplement the Class Certification Record (ECF 190-2)), which confirms that Mr. Lanier had no personal information about any of *Reuters*' sources other than himself and that his review of the *Reuters* Report was limited to what he purportedly provided to the reporter. ECF 190 at 4. Thus, J&J's hyperbolic

argument that the first Lanier Declaration somehow "demolishes the credibility of *Reuters*" is flat out wrong, and the Lanier Declaration fails to show that the *Reuters* Report was not based on internal J&J documents "'reported [t]here for the first time.'" Mtn. at 14 (alteration in original).

Moreover, even if defendants' obtained evidence from ***every*** source of information sought by these third-party subpoenas, such evidence would nonetheless fail to "prove[] a ***complete lack of price impact***" in connection with the *Reuters* Report disclosure, given: (1) the undisputed evidence regarding J&J's statistically significant, 10% stock price decline and loss of $40 billion in market capitalization following the *Reuters* Report's publication; (2) the numerous pieces of new and corrective information in the *Reuters* Report previously identified by plaintiff; (3) the testimony of Dr. Feinstein that the *Reuters* Report revealed new and corrective information and caused the statistically significant price decline on December 14, 2018; (4) the admission by defendants' expert that the *Reuters* Report revealed new information to the market; and (5) the failure by defendants' expert to identify ***any other potential cause*** for the massive stock price decline following the *Reuters* Report's publication. *See, e.g.*, *Monroe Cnty.*, 332 F.R.D. at 393-95; *CenturyLink*, 337 F.R.D. at 209; *Thorpe*, 2016 WL 4006661, at *13; *Plymouth Cnty.*, 2020 WL 5757695, at *13.

In sum, even if the Lanier Declaration becomes part of the class certification record, defendants have still failed to: (i) show that the *Reuters* Report contained no new corrective information; or (ii) identify ***any*** prior public revelation of numerous disclosures of corrective information found in the *Reuters* Report. *See* ECF 190.

**Mesothelioma.net Blog Post**

On February 5, 2018, Mesothelioma.net published a blog post entitled "Johnson & Johnson Mesothelioma Trial Likely to Expose Company Documents," authored by Terri Oppenheimer. ECF 33, ¶194. The article disclosed that "experts [were] anticipating the release of numerous damaging internal company documents" from J&J, contradicting defendants' prior false assurances concerning J&J's conduct, talc and powders. *Id.*, ¶¶10, 194. J&J's stock price suffered a statistically significant decline following the Mesothelioma.net publication, which J&J's expert does not refute. ECF 197 at 17-18. Media and financial analysts linked the stock price decline to the Mesothelioma.net blog post, and J&J rushed to issue a denial in response. *Id.* at 18-21.

In its Motion, J&J claims that the Declaration of Terri Oppenheimer, dated April 15, 2022 (ECF 192-1) (the "Oppenheimer Declaration") shows that the February 5, 2018 disclosure did not reveal any new information or objective "'truth.'" Mtn. at 11-12. But the declaration shows no such thing. Nowhere does the Oppenheimer Declaration identify any previous disclosure of the alleged corrective information –

that the website linked to plaintiff's attorneys in mesothelioma cases was announcing that experts anticipated "'the release of numerous damaging internal company documents.'" ECF 197 at 21. The Oppenheimer Declaration rests on a conclusory statement that the post was based on "public information gleaned from conducting internet searches," while not specifying a single document obtained from an internet search, or the dates of any such information. Mtn. at 7 (citing the Oppenheimer Declaration). And even if the post was "based on" public information, as Ms. Oppenheimer declares, it would still be viable as a corrective disclosure. ECF 197 at 15-16. At any rate, J&J already missed the boat on challenging this disclosure by waiting until April 2022, over a year after the class certification briefing deadlines, to submit a declaration that was obtainable in 2018, without good cause or excusable neglect. ECF 197 at 2-5.

**Beasley Allen Press Release**

On February 7, 2018, the Beasley Allen Law Firm issued a press release entitled: "New Johnson & Johnson, Imerys Documents Reveal More Cancer Links to Talc, Asbestos, Heavy Metals." ECF 33, ¶201. The press release informed investors of numerous pieces of new information contradicting defendants' false statements, including that talc litigation was "'revealing never-before-seen [J&J] documents,'" that J&J was "'"'just now getting around to turning over documents,'"'" and that the documents "'shed light on just how prevalent asbestos and heavy metals are in the talc

used in Baby Powder.'" ECF 197 at 22. J&J's stock price suffered a statistically significant decline following the press release's publication, which J&J's expert does not refute. *Id.*

In its Motion, J&J claims that the Declaration of Ted G. Meadows, dated April 22, 2022 (ECF 192-2) (the "Meadows Declaration") shows that the February 7, 2018 disclosure did not reveal any new information or objective "'truth.'" Mtn. at 11-12. But like the other declarations, the Meadows Declaration shows no such thing, as it fails to identify any previous disclosure of the alleged corrective information and instead provides a generic, conclusory representation that none of the statements in the press release "'reflected,' or were 'based on,'" non-public documents or information. ECF 197 at 23. Even if this were true, the Beasley Allen press release would still be viable as a corrective disclosure. *Id.* at 15-16. And, like the February 5, 2018 disclosure, J&J already missed its opportunity to challenge this disclosure. *Id.* at 2-5.

**Conclusion**

Despite extensive briefing on class certification, defendants have failed to show that the alleged disclosures did not correct defendants' false statements. J&J's purported "new evidence" does nothing to rectify this, as none of the declarations identify prior public disclosure of any of the alleged corrective information or refute

the fact that J&J's stock price suffered statistically significant declines following the alleged disclosures.

DATED: June 23, 2023

CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.
JAMES E. CECCHI

s/ JAMES E. CECCHI
JAMES E. CECCHI

5 Becker Farm Road
Roseland, NJ 07068
Telephone: 973/994-1700
973/994-1744 (fax)
jcecchi@carellabyrne.com

Local Counsel

ROBBINS GELLER RUDMAN & DOWD LLP
DARREN J. ROBBINS
TOR GRONBORG
ROBERT R. HENSSLER JR.
NATHAN R. LINDELL
HILLARY B. STAKEM
MATTHEW J. BALOTTA
JOSEPH J. TULL
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
torg@rgrdlaw.com
bhenssler@rgrdlaw.com
nlindell@rgrdlaw.com
hstakem@rgrdlaw.com
mbalotta@rgrdlaw.com
jtull@rgrdlaw.com

Lead Counsel for San Diego County
Employees Retirement Association and
Lead Counsel for the Class

# CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on June 23, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ JAMES E. CECCHI
JAMES E. CECCHI

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY &
AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Telephone: 973/994-1700
973/994-1744 (fax)

Email: jcecchi@carellabyrne.com