UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

FRANK HALL, et al.

    Plaintiffs,

v.

JOHNSON & JOHNSON, et al.,

    Defendants.

Civil Action No. 18-1833 (ZNQ)(TJB)

Memorandum & Order

Before the Court is Defendant Johnson & Johnson's ("J&J") Motion for Reconsideration of the Court's April 29, 2022 Opinion and Order (Docket Entry Nos. 162 and 163) granting non-parties Levy Konigsberg LLP ("Levy"), Moshe Maimon ("Maimon"), Hobson & Bradley, William Longo ("Dr. Longo"), the Smith Law Firm, PLLC (the "Smith Firm"), and Robert Allen Smith Jr. ("Smith") (referred to collectively as the "Subpoena Recipients") motions to quash J&J's subpoenas. For the reasons set forth below, J&J's Motion is **DENIED**.

### I. Background

The Court presumes the parties' familiarity with the history of this action and includes herein only background relevant to the instant motion. At issue in this reconsideration motion is the Court's Opinion and Order dated April 29, 2022 (the "April 29, 2022 Opinion") (Docket Entry Nos. 162 & 163.) As set forth therein, "this is a putative class action securities litigation in which Lead Plaintiff San Diego County Employees Retirement Association ("Plaintiff"), and other similarly situated investors, purchased J&J stock between February 2013 and October 2018, and claim that J&J, and the named Individual Defendants, violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5." (*See* Mem. Op. of 4/29/2022 ("Mem. Op."), Docket Entry No. 162, at 2.) Specifically, it is alleged that "Defendants fraudulently inflated the value of J&J's

1

stock by issuing false and misleading statements as part of a long-running scheme to conceal the truth from investors that the Company's talc products were contaminated with asbestos, and that Plaintiff and other investors relied on these material misrepresentations and omissions to their detriment." (*Id.* (citing Op. of 12/27/2019, at 1-2, Docket Entry No. 49.))

Plaintiff asserts that J&J's stock price started to decline after the publication of certain news articles and press releases revealing the truth about asbestos in its talc products. (*See, e.g.*, Pl.'s Am. Compl., at 6-7, ¶ 12, Docket Entry No. 33.) Plaintiff refers to the release of these news articles and publications as "corrective disclosures",[1] which allegedly caused a significant decline in J&J's stock price and financial harm to investors. (*Id.* at 239, ¶ 421.) Among the corrective disclosures that are subject to the present dispute include: a January 30, 2018 Law360 article that quotes Mr. Maimon of Levy Konisberg, LLP; a February 5, 2018 blog post from Mesothelioma.net; a February 7, 2018 press release from a plaintiff's law firm, Beasley, Allen, Crow, Methvin, Portis, P.C.; and a December 14, 2018 *Reuters* article, which referenced lab reports from Plaintiff's expert, Dr. Longo. (*See* J&J's Moving Br. ["Moving Br."], Docket Entry No. 198, at 3-4.)

At or around August 2021, J&J served the third-party subpoenas on the Subpoena Recipients, all of whom are non-parties to the present action. (Subpoena Recipients Br. in Opp'n ["S.R. Br."], Docket Entry No. 204, at 1). J&J's subpoenas[2] sought to obtain "[a]ll communications" between the Subpoena Recipients, many of whom are attorneys that have represented plaintiffs in lawsuits against J&J involving its talcum powder products, and any

---

[1] A "corrective disclosure" in securities litigation is the "a release of information that reveals to the market the pertinent truth that was previously concealed or obscured by the company's fraud." *FindWhat Investor Group v. FindWhat.com*, 658 F.3d 1282, 1311 (11th Cir. 2011).

[2] The information requested in the Subpoenas is set forth, in detail, in the Court's April 29, 2022 Opinion. (*See* Mem. Op. at 2–4.)

"Media Organization" that reported on J&J's talcum powder products. (*See* Mem. Op. at 2-4.) The Subpoena Recipients moved to quash, asserting, among other things, that the information sought was protected by the First Amendment, that enforcing the subpoenas would impose an undue burden on them, that the information sought was not relevant, and that J&J was improperly targeting attorneys who continue to litigate personal injury cases against it. (*See id.* at 4.)

On April 29, 2022, the Court granted the motions to quash. (*Id.* at 9.) In the Opinion, the Court set forth its view that the media reports and alleged corrective disclosures were relevant to the nature of Plaintiff's underlying claims. However, in terms of the information sought within J&J's subpoenas, the Court determined that J&J's objective did not simply involve obtaining all media reports identified by the Plaintiff as "corrective disclosures" or the specific documents referenced in those reports. (*Id.* at 7–8.) Rather, the Court found that J&J was "attempting to obtain discovery of non-public statements made by attorneys or their experts involved in product liability litigation against J&J" and:

> None of the arguments raised by J & J establishes how non-public statements made by said attorneys or their experts impacts whether new facts were actually disclosed in the media reports identified as "corrective disclosures." Further, J & J cites no pertinent caselaw supporting its theory that such non-public statements are relevant.
>
> [*Id.* at 8.]

In terms of the relevance of the discovery sought, the Court determined:

> It [was] hard to see what bearing non-public statements made by the product liability lawyers and/or their experts have on (1) the veracity of J&J's statements; (2) whether the information outlined in the alleged "corrective disclosures" is true; or (3) whether the information set forth in the "corrective disclosures" is new. And, again, J&J fails to cite a single case requiring similar discovery under analogous circumstances.
>
> [*Id.*]

3

J&J filed its motion for reconsideration on June 2, 2023.  (Docket Entry No. 198.)  The Subpoena Recipients opposed J&J's Motion on June 30, 2023. (Docket Entry Nos. 204 & 205.) Plaintiff "takes no position on the motions to quash," but has filed a response to address certain arguments put forth by J&J regarding the class certification record.  (Docket Entry No. 203.)

## II. <u>Legal Standard</u>

While not expressly authorized by the Federal Rules of Civil Procedure, motions for reconsideration are governed by Local Civil Rule 7.1(i).  *Weston v. Subaru of Am., Inc.*, Civ. No. 20-5876, 2022 WL 18024222, at *7 (D.N.J. Dec. 31, 2022).  It is well established that a motion for reconsideration is to apply in extremely limited circumstances.  *Tehan v. Disability Mgmt. Servs., Inc.*, 111 F. Supp. 2d 542, 549 (D.N.J. 2000); *see also A.K. Stamping Co. Inc., v. Instrument Specialties Co. Inc.*, 106 F.Supp.2d 627, 662 (D.N.J. 2000) (internal citations and quotations omitted) ("The extraordinary remedy of reconsideration, pursuant to . . . Local Civil Rule 7.1, is to be granted sparingly."); *Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 533 (D.N.J. 1998) ("[A] motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple.").  Thus, a motion for reconsideration must be denied "where a party simply asks the court to analyze the same facts and cases it had already considered in reaching its original decision." *Tehan,* 111 F. Supp. 2d at 549*; see, e.g., Morris v. Siemens Components, Inc.*, 938 F. Supp. 277, 278 (D.N.J. 1996) ("A party's mere disagreement with a decision of the district court should be raised in the ordinary appellate process and is inappropriate on a motion for reargument.").

In a motion for reconsideration, the movant bears the burden of establishing either: (1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent a manifest injustice.

*Max's Seafood Cafe ex rel. Lou-Ann v. Quinteros*, 176 F.3d 669, 677 (3d. Cir. 1999). To be clearly erroneous, the Court must have a "definite and firm conviction that a mistake has been committed." *Haines v. Liggett Group, Inc.*, 975 F. 2d 81, 92 (3d Cir. 1992). A manifest injustice is "an error in the trial court that is direct, obvious, and observable." *Antonio-Villalba v. Hollingsworth*, Civ. Nos. 12-7779, 12-7836, 2013 WL 5592367, at *2 (D.N.J. Oct. 13, 2013).

## III. Analysis

As a threshold matter, the Court considers whether J&J's motion for reconsideration was timely filed. Pursuant to Local Civil Rule 7.1(i) "a motion for reconsideration shall be served and filed within 14 days after the entry of the order or judgment on the original motion by the Judge or Magistrate Judge." On this issue, the Court recognizes that the procedural context following the Court's April 29, 2022 Opinion is somewhat convoluted. The Court issued its initial decision on April 29, 2022, and J&J's Motion was not filed until June 2, 2023. However, as raised by J&J, the United States Bankruptcy Court for the District of New Jersey stayed this case on May 9, 2022, ten days after the Court's decision. The Bankruptcy stay tolled all applicable filing deadlines. (*See* Docket Entry Nos. 168 and 171.) This case was administratively closed on March 31, 2023. (Docket Entry No.176.) As noted by J&J, the matter was not reopened until May 8, 2023 (Docket Entry No. 177).

Upon reopening of the case, it appears that Plaintiff and J&J conferred and submitted an update and schedule to the undersigned on May 18, 2023, outlining a plan for moving this case forward as well as upcoming motion filing deadlines. J&J emphasizes that the schedule within the May 18, 2023, submission stated that J&J would be filing this motion for reconsideration on June 2, 2023. (Docket Entry No. 179, at 2). J&J then filed the instant motion on June 2, 2023. (Docket Entry No. 198.)

While the Court accepts J&J's position that the U.S. Bankruptcy Court Order and subsequent administrative termination of this case tolled the deadlines for filing its motion for reconsideration, the tolling of all deadlines would only be applicable during the period when the stay and/or administrative termination were in effect. J&J does not dispute that this matter was administratively reopened on May 8, 2023. (*See* Moving Br., Docket Entry No. 198, at 1.) In accordance with Local Civil Rule 7.1(i), J&J was required to file its motion for reconsideration by May 12, 2023, since only four days remained of the fourteen-day period, or by May 22, 2023, if the Court allowed the fourteen-day period to commence again.

J&J endeavors to circumvent the 14-day deadline by asserting that "the parties submitted an agreed schedule for briefing this Motion." (*See* Moving Br., at 1 n.1.) That schedule, however, was exclusive to Plaintiff and J&J. In the context of third-party discovery, the Court will not credit a motion schedule that was entered exclusively between Plaintiff and J&J. Further, although Plaintiff and J&J may have agreed upon a filing deadline of June 2, 2023, for this reconsideration motion, J&J fails to mention that within the same paragraph, their schedule clearly provided that J&J would "contact the non-parties' counsel regarding these deadlines." (Docket Entry No. 179, at 2.) Notably, the Subpoena Recipients and their counsel have confirmed that J&J did not attempt to contact them or obtain consent to extend the filing deadline prescribed by Local Civil Rule 7.1(i). (*See* S.R. Br., Docket Entry No. 204, at 3–4; Docket Entry No. 205, at 10–11.) J&J does not suggest that it ever attempted to contact the Subpoena Recipients' counsel.[3] Nor is there any evidence to show that the Subpoena Recipients waived the 14-day deadline.

---

[3] J&J has chosen not to file a reply brief. Thus, the Court accepts the Subpoena Recipients' counsel's statements as true and uncontested.

Accordingly, the Court concludes that this Motion is time-barred as it was filed after the 14-day deadline had elapsed. This alone shall serve as grounds to deny J&J's motion for reconsideration. *See Oriakhi v. Bureau of Prisons*, No. 07-264, 2009 U.S. Dist. LEXIS 55379, 2009 WL 1874199, at *3 (D.N.J. June 29, 2009) ("An untimely filed motion for reconsideration may be denied for that reason alone." (internal quotation marks omitted)); *T.H. v. Clinton Twp. Bd. of Educ.*, No. 05-3709, 2006 WL 1722600, at *2 (D.N.J. June 16, 2006).

The Court will, nonetheless, address the substantive arguments presented in J&J's Motion. On reconsideration, J&J presents two main arguments. First, J&J argues that the Court erroneously denied the requested discovery by applying a heightened relevance standard for third-party discovery. (Mov. Br., at 9.) Specifically, J&J argues that the Court incorrectly cited *Stamy v. Packer*, 138 F.R.D. 412, 419 (D.N.J. 1990), for the proposition that "the standards for nonparty discovery require a stronger showing of relevance than for simple party discovery." (*Id.*) According to J&J, the *Stamy* decision was made prior to the 1991 amendments to Federal Rule of Civil Procedure 45 ("1991 Amendments"), which amended Rule 45 to state that a "nonparty subpoenaed pursuant to Rule 45 'is subject to the same scope of discovery . . . as a party to whom a request is addressed pursuant to Rule 34.'" (Mov. Br., at 10.) Based on the 1991 Amendments, J&J argues that "the standard of relevance does not change based on party status," and that the Court's reference to *Stamy* and its progeny constituted a clear legal error. (*See* Mem. Op., at 5, Docket Entry No. 162.) J&J lends support from the advisory committee notes to the 1991 Amendments, several secondary sources, and cases from other jurisdictions that may have utilized this approach for third-party discovery.[4]

---

[4] To note, it appears that J&J previously failed to raise its contentions regarding the 1991 Amendments in its original opposition to the Subpoena Recipients' motions to quash. (*See generally* Docket Entry No. 131). Indeed, generally, L.Civ.R. 7.1(i) "does not contemplate a Court

7

The Court does not believe that Its reference to *Stamy* constitutes a legal error that warrants reconsideration. Absent from J&J's moving papers is any reference to controlling case law within this District or Circuit that applies the 1991 Amendments to the circumstances presented here. On the other hand, substantial case law from this District confirms that the courts routinely afford a higher level of protection to non-parties who are subject to discovery requests. Of note, over a dozen cases since the *Stamy* decision have relied on the same proposition that non-party discovery requires a stronger showing of relevance than routine party discovery. *See, e.g.*, *Phillips v. Archdiocese of Newark*, Civ. No. 18-12207, 2023 WL 3303594, at *3 (D.N.J. May 8, 2023) ("the standards for nonparty discovery require a stronger showing of relevance than for simple party discovery" and that such limitation is "particularly appropriate in the context of third-party subpoenas"); *Walgreens Specialty Pharm., LLC v. Atrium Admin. Servs.*, 2020 WL 6042280, at *3 (D.N.J. Oct. 13, 2020) (same); *Burgess v. Galloway, et al.*, Civ. A. No. 20-06744, 2021 WL 2661290, at *3 (D.N.J. Jan. 28, 2021) (quoting *Stamy v. Packer*, 138 F.R.D. 412, 419 (D.N.J. 1990); *Chazanow v. Sussex Bank*, 2014 WL 2965697 *3 (D.N.J. July 1, 2014) (affording non-party greater protection from discovery). Given this context, the Court denies J&J's request for reconsideration on this basis.

J&J also claims that there is "new evidence" which requires the Court to reconsider its prior decision. (Moving Br., at 6.) Before the April 29, 2022 Opinion was issued, J&J states that it had "received new evidence from other third parties about the *Reuters* Article, the Meso.net Blog

---

looking to matters which were not originally presented." *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F.Supp. 159, 162 (D.N.J. 1988). Consequently, "except in cases where there is a need to correct a clear error or manifest injustice, '[o]nly dispositive factual matters and controlling decisions of law which were presented to the court but not considered on the original motion may be the subject of a motion for reconsideration.'" *Guinta v. Accenture, LLP*, Civ. No. 08-3776 (DRD), 2009 WL 301920, *5 (D.N.J. Jan. 23, 2009) (quoting *Resorts Int'l*, 830 F.Supp. at 831).

8

Post, and the Beasley Allen Press Release." (*Id.*) Specifically, the alleged new evidence consists of declarations from Mark Lanier ("Lainer") and Ted Meadows ("Meadows"), other lawyers who litigated product liability cases against J&J, and Terri Oppenheimer ("Oppenheimer"), an author of Meso.net Blog Post. (*Id.* at 6-8.) Within these declarations, Lanier, Meadows, and Oppenheimer have each certified that the information on which the alleged corrective disclosures were based was publicly available prior to the publication of said disclosures. J&J refers to the Lanier, Meadows, and Oppenheimer declarations and argues they "demonstrate that the purported corrective disclosures did not reveal any new information or objective truth." (Moving Br., at 11.)

It is well established that where a party moves for reconsideration based on previously unavailable evidence, relief is unavailable "where the evidence provided in support of such a motion was available but was not submitted" with the prior motion. *Menke v. Baker*, Civ. No. 10-2585, 2012 WL 3146876, at *3 (D.N.J. Aug. 8, 2012). Therefore, to prevail, J&J must show that these declarations constitute "new evidence that [were] not available when the court granted the [motion]." *Max's Seafood Café*, 176 F.3d at 677. "New evidence" for purposes of reconsideration "means evidence that a party could not earlier submit to the court because that evidence was not previously available." *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 252 (3d Cir. 2010).

J&J's proffered new evidence was available prior to the Court's April 29, 2022 Opinion. Each of the three declarations were available weeks or months prior to the Court's decision. The Declaration of Mark Lanier was executed in December 2021—four months before the Court issued its decision. (Docket Entry No. 198-6, Ex. 5.) Likewise, the Declarations of Teri Oppenheimer and Ted Meadows are dated April 15, 2022, and April 22, 2022, week(s) prior to the Court's decision. (Docket Entry Nos. 198-7, Ex. 6 and 198-8, Ex. 7.) If this evidence was as important as

9

J&J claims, the Court is hard-pressed to find why J&J did not simply raise or submit these declarations as a supplemental submission prior to the issuance of the April 29, 2022 Opinion. J&J's request for reconsideration based on this alleged new evidence is denied.[5]  Accordingly,

IT IS on this  20th   day of  December    2023,

**ORDERED** that J&J's Motion for Reconsideration of the Court's April 29, 2022 Opinion is **DENIED**; and it is further

**ORDERED** that the Clerk of Court terminate Docket Entry No. 198.

s/ Tonianne J. Bongiovanni<br>
**TONIANNE J. BONGIOVANNI**<br>
**United States Magistrate Judge**

---

[5] Even if the Court were to find that this evidence is "new", which it does not, the Court does not find that these declarations would impact its prior decision. Indeed, as outlined in the April 29, 2022 decision, nothing submitted by J&J in its reconsideration motion would change the Court's prior analysis that the evidence sought by J&J's subpoenas is irrelevant to (1) the truth of J&J's statements; (2) whether the information in the corrective disclosures is true; and (3) whether the information in the corrective disclosures is new. (Mem. Op., at 8.)