

CARELLA BYRNE
CECCHI BRODY
AGNELLO, P.C.

| | | | |
|---|---|---|---|
| AN ALAN BRODY | DONALD F. MICELI | OF COUNSEL | MARYSSA P. GEIST |
| JOHN M. AGNELLO | MELISSA E. FLAX | PETER G. STEWART | BRITTNEY M. MASTRANGELO |
| CHARLES M. CARELLA | DAVID G. GILFILLAN | CARL R. WOODWARD, III | GRANT Y. LEE*** |
| JAMES E. CECCHI | G. GLENNON TROUBLEFIELD | FRANCIS C. HAND | MAYBOL HALL |
| | BRIAN H. FENLON | JAMES A. O'BRIEN, III | WILLIAM J. MANORY |
| | CAROLINE F. BARTLETT | JOHN G. ESMERADO | NESLIHAN Z. TALU |
| CHARLES C. CARELLA | ZACHARY S. BOWER+ | STEVEN G. TYSON | PATRICK J. DOHERTY |
| 11/21/33 – 11/4/23 | DONALD A. ECKLUND | MATTHEW J. CERES | |
| | CHRISTOPHER H. WESTRICK* | ZACHARY A. JACOBS*** | *CERTIFIED BY THE SUPREME COURT OF NEW JERSEY AS A CIVIL TRIAL ATTORNEY |
| | STEPHEN R. DANEK | JASON H. ALPERSTEIN | |
| | MICHAEL A. INNES | RAYMOND J. LILLIE | ***MEMBER IL BAR ONLY |
| | MEGAN A. NATALE | GREGORY G. MAROTTA | +MEMBER FL BAR ONLY |
| | KEVIN G. COOPER | | |

July 24, 2026

<u>VIA ECF</u>

Hon. Tonianne J. Bongiovanni, U.S.M.J.
United States District Court
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

> Re: ***Frank Hall v. Johnson & Johnson, et al.*,**
> **No. 3:18-cv-01833-ZNQ-TJB (D.N.J.)**

Dear Judge Bongiovanni:

Lead Plaintiff San Diego County Employees Retirement Association ("Plaintiff") respectfully submits this response to Defendants' July 14, 2026 letter brief (ECF 264) ("Letter").[1] Defendants' supplemental submission confirms, rather than cures, their violation of the Parties' 2021 stipulation (ECF 239-1) (the "Stipulation"). The Parties resolved a discovery dispute by striking a straightforward bargain: Plaintiff agreed to forego discovery into the Gibson Dunn Report and Investigation, and Defendants agreed not to use the Report or Investigation in opposing Plaintiff's substantive claims. After obtaining the benefit of that agreement, Defendants now seek to use the Report and Investigation affirmatively through their expert witnesses while asking the

---

[1]  "Defendants" are Johnson & Johnson ("J&J"), Alex Gorsky, Carol Goodrich, Joan Casalvieri, and Tara Glasgow (together with Plaintiff, the "Parties"). The "Investigation" refers to the internal investigation conducted by Gibson Dunn & Crutcher LLP referred to in the Stipulation. The "Gibson Dunn Report" or "Report" refers to the July 10, 2020 Special Investigation Report to the J&J Board of Directors issued by Gibson Dunn. Unless otherwise noted, citations are omitted and emphasis is added.

Hon. Tonianne J. Bongiovanni
July 24, 2026
Page 2

Court to reinterpret the Stipulation as though that bargain never existed.  The Court should decline that invitation and enforce the Stipulation as written.

The violation is neither technical nor harmless.  Defendants repeatedly represented during the Parties' negotiations that the Investigation was "not relevant to the claims and defenses in this case," that "the conduct of the investigation itself is not at issue," and that they did not intend to use the Report or Investigation to oppose Plaintiff's claims.  Yet, their experts now rely on and praise the Investigation's purported thoroughness, independence, methodology, and conclusions to support opinions attacking Plaintiff's claims.  That is precisely the use Plaintiff agreed to forgo discovery to prevent.  The appropriate remedy is to require Defendants to serve amended expert reports removing all reliance on, reference to, or discussion of the Gibson Dunn Report and Investigation.  If Defendants contend those references cannot be removed without materially affecting the opinions, that only confirms that the prohibited material plays a substantive role in the expert reports and supports more substantial relief.

## I.     Background

During discovery, Plaintiff requested documents concerning any investigation conducted by or on behalf of J&J relevant to this litigation and also requested all documents Defendants believed supported any of their defenses (Plaintiff's April 16, 2020 Requests for Production, Nos. 85 and 91).

On December 11, 2020, Defendants served Plaintiff with their brief opposing class certification in this litigation, citing the Gibson Dunn Report.  ECF 105 at 5 n.3.  This triggered an extensive meet and confer process regarding discovery into the Investigation and Report.  Plaintiff made clear to Defendants its position that materials relating to the Investigation and Report were relevant and subject to discovery unless Defendants would agree to not use the Report for any purpose, "including in support of any argument or legal defense."  ECF 264-3 at 16.  Defendants assured Plaintiff that no stipulation was necessary.  *Id.* at 15.

On February 22, 2021, Plaintiff filed a letter with the Court regarding the ongoing dispute over Investigation and Report-related materials.  *See* ECF 86.  After refusing to produce relevant materials concerning the Investigation and also refusing to stipulate to not using the Investigation or Report, Defendants stated that they were "surprised" that Plaintiff filed a letter with the Court.  ECF 87 at 1.  The Parties then continued their meet-and-confer efforts.  On March 4, 2021, Plaintiff again expressed that its focus was on whether Defendants could rely on the Report in this case.  ECF 264-3 at 12.  Defendants assured Plaintiff: "we do not intend to" rely "on the report to oppose the merits of Plaintiff's claims."  *Id.* at 11.

Hon. Tonianne J. Bongiovanni
July 24, 2026
Page 3

On April 2, 2021, Defendants asserted that the **"*Gibson Dunn investigation materials*'"** *"are not relevant to the claims and defenses in this case" and that "[t]he conduct of the investigation itself is not at issue in this litigation."* ECF 264-3 at 7. Defendants assured Plaintiff: "as we have stated multiple times before, Defendants do not intend to use the Gibson report as evidence or as a basis for legal argument in opposing Plaintiff's substantive claims in this litigation." *Id.*

Following further meeting and conferring, on April 23, 2021, Plaintiff made clear to Defendants that the crux of the dispute was whether Defendants had put the Gibson Dunn Report at issue in the case. ECF 264-3 at 3. Plaintiff asserted that the dispute was ripe to bring to the Court. *Id.* Defendants responded by offering a stipulation that they "will not use the Gibson report as evidence or as a basis for legal argument in opposing Plaintiff's substantive claims in this litigation," stating that Defendants believed the proposed stipulation "provides the certainty that Plaintiff said it needs to avoid a dispute before the Court." ECF 264-3 at 2. Defendants specifically pointed to the fact that they were willing to stipulate to not using the Report, rather than stipulating to not "intend[ing]" to use the report. *Id.* At no point did Defendants mention their purported intent that the Stipulation contain a carve-out for relying on the Investigation or Report in expert reports. On the other hand, Plaintiff had communicated numerous times that the dispute would have to be brought to the Court unless Defendants agreed to not use the Report or Investigation in opposing Plaintiff's claims.

On May 18, 2021, Plaintiff sent a draft stipulation to Defendants. *See* Ex. 1. The draft contained a preamble discussing the context of the issue, including that the Parties had "productive discussions" on whether Defendants "intend to rely on the Gibson Dunn report or investigation in this Action." *Id.* at 3. On June 3, 2021, Defendants shared their "proposed simplification of the Gibson document stipulation," stating that "we all have the detailed email chain as background context." Ex. 2 at 1. The Stipulation was finalized on June 7, 2021 (ECF 239-1).

Defendants served their expert reports on May 1, 2026. Three of those reports – from testifying experts Professor John Coates, Cynthia Gronostajski, and Max H. Bazerman – expressly rely on the Investigation and Report, going further than making passing "references" to them in a "limited nature." Letter at 3. For example, Bazerman heavily relies on and extols the Report and Investigation, as he: (i) provides an extensive and glowing discussion of the investigator's experience, credentials, and awards; (ii) highlights the J&J Board's purported willingness to provide "whatever resources" necessary for the Investigation; (iii) proclaims that the Investigation was "thorough" and the Report was "comprehensive"; (iv) details the number of months and hours purportedly spent; (v) agrees with the conclusions in the Report and asserts that it "reflects a thorough and objective analysis"; and (vi) relies on J&J's retention of Gibson Dunn to reinforce his conclusion that J&J acted ethically and responsibly. Expert Report of Professor Max Bazerman,

Hon. Tonianne J. Bongiovanni
July 24, 2026
Page 4

dated May 1, 2026 (ECF 264-6) ("Bazerman Rpt."), ¶¶71-74.  He even goes so far as to fault one of Plaintiff's experts for not mentioning "the extensive efforts by [J&J] to assess the evidence through the thorough review of the Gibson Dunn Report."  Bazerman Rpt., ¶81.  Defendants downplay or ignore much of this content.  *See* Letter at 3.

Coates and Gronostajski also rely on the Investigation and Report.  *See, e.g.*, Expert Report of Cynthia Gronostajski, dated May 1, 2026 (ECF 264-5) ("Gronostajski Rpt."), ¶¶98-99 (extolling the "detailed factual review" of the Investigation and "in-depth analysis" in the Report and relying on the Report to support opinion regarding J&J's "[q]uality and [m]edical [s]afety" functions and the effectiveness of J&J's quality management systems); Expert Report of Professor John Coates, dated May 1, 2026 (ECF 264-4) ("Coates Rpt."), ¶173 (relying on the Gibson Dunn Report to conclude that J&J's Disclosure Committee extensively discussed and "'did not simply "rubber stamp""" an allegedly false statement).  Defendants claim that Coates "occasionally cites the Report . . . for basic background facts" a "few" times.  Letter at 4 n.3 (listing three footnotes).  Actually, Coates cites to it *approximately 29 times*, and for far more than "basic background" facts.  *See* Coates Rpt. at nn. 202, 214, 233, 237, 251, 258, 280, 293, 301, 343, 345-349, 351-352, 359-360, 392-393, 418, 483, 488-492, 517.

## II.    Argument

### A.    The Stipulation Prohibits Defendants From Using the Gibson Dunn Investigation and Report as Part of Their Merits Defense, Including Through Expert Reports.

"A consensual stipulation of the parties is 'to be interpreted according to the general principles of contract construction.'"  *USX Corp. v. Penn Cent. Corp.*, 130 F.3d 562, 566 (3d Cir. 1997) (quoting *Pittsburgh Terminal Corp. v. Balt. & Ohio R.R. Co.*, 824 F.2d 249, 254 (3d Cir. 1987)).  Specifically, "[i]n interpreting a stipulation, courts should consider its plain language and 'the circumstances surrounding the formation of the [s]tipulation which may explain' its meaning."  *Waldorf v. Shuta*, 142 F.3d 601, 612 (3d Cir. 1998).  In construing a stipulation, "every effort should be made to effectuate the intent of the parties."  *United States v. Reading Co.*, 289 F.2d 7, 9 (3d Cir. 1961).  Here, the meaning and intent of the Stipulation are clear both from the Stipulation itself as well as the negotiations leading to it: Plaintiff would forego discovery regarding the Report and Investigation, in exchange for Defendants foregoing the use of the Report or Investigation in opposing Plaintiff's claims.

Hon. Tonianne J. Bongiovanni
July 24, 2026
Page 5

### 1. The Plain Language of the Stipulation Prohibits Defendants' Use of the Stipulation Through Expert Evidence

By its very language, the Stipulation prohibits Defendants' use of the Investigation and Report through their experts. The Stipulation states: "Defendants will not use the Gibson Dunn report or investigation as evidence or as a basis for legal argument in opposing Lead Plaintiff's substantive claims in this action." ECF 239-1. The prohibition on "us[ing]" the Investigation or Report "as evidence" is notably broader than Defendants' claimed prohibition on "tender[ing]" them "into evidence." Letter at 4. Indeed, it **has** to be understood as broader, because the narrower interpretation would render at least part of the Stipulation meaningless – one cannot introduce an entire "Investigation" into evidence. *Reading Co.*, 289 F.2d at 9 ("permissible interpretation which makes [a stipulation] operative is preferred over one which makes it meaningless"); *Wash. Hosp. v. White*, 889 F.2d 1294, 1300 (3d Cir. 1989) ("contract construction 'which gives effect and meaning to a term is to be preferred over one which makes such term mere surplusage or without effect'"). Tacitly acknowledging this, Defendants' argument concerning the language of the Stipulation addresses only the Report, ignoring the Stipulation's express application to the Investigation. *See* Letter at 4-5.

Importantly, the plain language of the Stipulation does not distinguish between indirect or direct use of the Investigation or Report. There is no basis to suggest that the Stipulation only prohibits Defendants from directly tendering something into evidence or citing it in a brief or argument, while permitting them to do the same exact thing by funneling it through experts. As the Court pointed out at the June 29, 2026 hearing, Defendants could have, but did not, seek to incorporate a provision in the Stipulation allowing the use of the Investigation or Report indirectly through experts. ECF 264-7 at 10:15-20 (If "it was not your intention to waive your right to have your expert review [this] and reference this information . . . it seems to me that that would be something that would be mentioned in the stipulation."); *see also Waldorf*, 142 F.3d at 612 (looking to the "plain language of the stipulation" showed there was no reservation of the right to assert a comparative negligence defense).

Defendants argue that they have not violated the plain language of the Stipulation because: (i) expert reports are not themselves evidence; and (ii) because the experts considered the Gibson Dunn Report and Investigation, they were required to include them in the expert reports as "'facts or data considered'" under Federal Rule of Civil Procedure 26(a)(2). Letter at 4. Setting aside that Defendants **chose** to give their experts the Gibson Dunn Report to consider in forming their opinions in the first place, expert reports are not simply recitations of facts and data an expert has considered. They are "'intended to set forth the substance of the direct examination, [and] should be written in a manner that reflects the testimony to be given by the witness.'" *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 347 F. Supp. 2d 129, 135 (D. Del. 2004) (emphasis omitted)

Hon. Tonianne J. Bongiovanni
July 24, 2026
Page 6

(quoting Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note to 1993 amendment). Defendants' suggestion that their experts *only* discuss the Investigation and Report as "'facts or data,'" and not as a matter of future testimony is implausible. Defendants admit that the expert reports signal an intent to testify about the Investigation and Report at trial. Letter at 4. They merely ask the Court to kick the can down the road, allowing them to preserve the right to violate the Stipulation later, after Plaintiff incurred the prejudice of responding to their improper expert testimony. Letter at 4. If, in fact, Defendants' experts' references to the Investigation and Report do not reflect an intent that Defendants' experts will testify to such matters, there should be no issue with Defendants removing them from the reports to avoid any future confusion about the testimony "to be given by the witness."

Defendants' claim that Plaintiff "labeled the experts' references to the Report as 'corroboration evidence'" at the June 29 hearing attacks a strawman. Letter at 4. What Plaintiff actually argued at the hearing was that Defendants were seeking to use the Investigation "affirmatively through expert testimony, attacking our claims," which was "exactly what the stipulation prohibited." ECF 264-7 at 2:12-24. Plaintiff's discussion of "corroboration," on the other hand, was in response to *Defendants'* arguments. *See id.* at 3:5-7 (Plaintiff's counsel: "Now they say repeatedly, well, their experts' reliance on the investigation, it's just corroboration."). The point was that even using the Investigation and Report for mere "corroboration" still violated the Stipulation, not that "corroboration" was the only reason the experts cited to the Report. A plain reading of the expert reports show that they rely on the Investigation and Report for far more than "corroboration," as detailed above. Defendants assert that the experts are not "offering Gibson Dunn's substantive conclusions as proof or disproof" of any element of Plaintiff's claims. Letter at 4-5. But that's exactly what they are doing.[2]

Finally, Defendants argue that "expert reports themselves are not legal arguments." Letter at 5. But this misses the point, as the Stipulation prohibits using the Investigation or Report in legal arguments whether that be through direct reference or discussion, or indirectly through the conduit of experts.

---

[2]   *See* Bazerman Rpt., ¶¶51, 71-74 (describing the Investigation and Report and relying on them as one of only five episodes examined in support of his opinion concerning J&J's conduct); Coates Rpt. at nn. 233, 237, 251, 293, 301, 359-360, 392-393 (relying on factual representations made in the Gibson Dunn Report concerning preparation and vetting of public statements); Gronostajski Rpt., ¶99 (referring to Gibson Dunn's purported findings regarding "J&J's Medical Safety and Quality & Compliance organizations," its "'monitoring of . . . literature,'" and its "'surveillance [and] product safety reviews,'" and extoling the Investigation's "in-depth analysis).

Hon. Tonianne J. Bongiovanni
July 24, 2026
Page 7

### 2.    The Parties' Negotiations Demonstrate That Defendants Were Not Intended to Be Able to Shoehorn the Investigation and Report Into the Record Through Expert Witnesses

To the extent the Court finds the language of the Stipulation to be ambiguous, it "must resolve the question of the parties' intent by interpreting the stipulation on the basis of relevant extrinsic evidence," such as "evidence of the parties' negotiations leading up to the stipulation." *Wash. Hosp.*, 889 F.2d at 1296.[3]  The Parties' extensive negotiations before entering into the Stipulation confirm Plaintiff's interpretation.

Throughout the process, Plaintiff made clear that their intent was for the Stipulation to prohibit using the Investigation or Report against Plaintiff in exchange for Plaintiff relinquishing their right to pursue relevant discovery regarding the Investigation and Report.  *See* ECF 264-3 at 16 (requesting stipulation that Defendants would not use the Report for any purpose "including in support of any argument or legal defense"); *id.* at 12 (discussing whether Defendants could "rely on the Gibson Dunn report in this case"); *id.* at 3 (focusing on whether "Defendants have put the investigative report at issue"); *id.* (discussing Plaintiff having the "opportunity to probe the adequacy and integrity of the report").

On the other hand, Defendants ***never*** expressed any intent to be able to use the Report or Investigation through expert witnesses.  In fact, Defendants assured Plaintiff that they ***did not*** intend to rely on the Report to oppose the merits of Plaintiff's claims.  *See, e.g.*, ECF 264-3 at 11 ("We do not believe we have 'relied on' the report to oppose the merits of Plaintiff's claims, and ***we do not intend to***.").  Throughout the Parties' negotiations, Defendants insisted that the Report and Investigation were irrelevant to this litigation and that they had no intention of using them to oppose Plaintiff's claims.  For example, Defendants represented the following:

> The [investigation materials] ***are not relevant*** to the claims and defenses in this case. The conduct of the investigation itself ***is not at issue*** in this litigation (and indeed is the subject of separate litigation . . .).  And as we have stated multiple times before, Defendants do not intend to use the Gibson report as evidence or as a basis for legal argument in opposing Plaintiff's substantive claims in this litigation.

---

[3]    Notably, the use of the term "evidence" by the Third Circuit in *Washington Hosp.* further supports Plaintiff's interpretation.  The "evidence" submitted by the Parties as exhibits to the briefing on this issue is not being proffered into evidence for the jury (Defendants' narrow concept of "evidence"), but is nonetheless referred to as "evidence."

Hon. Tonianne J. Bongiovanni
July 24, 2026
Page 8

*See* ECF 264-3 at 7.[4]

The drafting process of the Stipulation also evidences the clear intent of the Parties. One draft's preamble explicitly stated that the Parties had "productive discussions" on whether Defendants "***intend to rely on the Gibson Dunn report or investigation in this Action***." Ex 1 at 3. Defendants subsequently removed this text from the Stipulation, but carefully dispelled any concern Plaintiff might have had about its removal by assuring Plaintiff that they were merely "simplif[ying]" the Stipulation, stating that "we all have the detailed email chain as background context." Ex. 2 at 1.

That "background context" makes the Parties' intent clear – no further discovery into the Report and Investigation in exchange for Defendants not using them substantively against Plaintiff. And there can be no doubt that it was based solely on this understanding – generated through Plaintiff's communications throughout the process and Defendants' (false) assurances – that Plaintiff abandoned discovery into the Investigation and Report. In sum, Defendants had every reason to know how Plaintiff interpreted the Stipulation, and they should therefore be bound by that interpretation, as their own case law recognizes. *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 99 (3d Cir. 2001) ("it is a central principle of contract interpretation that if a party knew or had reason to know of the other parties' interpretation of terms of a contract, the first party should be bound by that interpretation"). Having received the benefit of the Stipulation, Defendants cannot now be relieved of the prohibitions they agreed to. *Bausch Health Ireland Ltd. v. MSN Lab'ys Priv. Ltd.*, 2025 WL 3079198, at *1 n.1 (D.N.J. Nov. 4, 2025) ("'A party to a stipulation cannot be relieved of its burdens while holding onto its benefits.'") (quoting 73 Am. Jur. 2d *Stipulations* §12 Westlaw (database updated May 2026)).

### 3.    Defendants' Arguments Concerning the Negotiations are Meritless

Defendants distort much of the negotiation history evidencing the Parties' intent. For example, they mischaracterize the 2021 discovery dispute regarding the Report and Investigation as merely being a "privilege dispute" (Letter at 2), even claiming that J&J's position "throughout this dispute has reflected ***only*** a . . . protection of privilege and attorney work product." Letter at 2 n.2.

---

[4]    *See also* ECF 264-3 at 17 ("Plaintiff does not explain how these materials are relevant to class certification."); *id.* at 15 ("[t]hose materials plainly are not relevant to class certification"); *id.* ("[w]e do not believe any stipulation is necessary"); *id.* at 10 ("the Gibson investigation and report are the subject of other litigation"); *id.* at 6 ("[t]here is, in fact, a dispute over whether [the investigation materials] are relevant").

Hon. Tonianne J. Bongiovanni
July 24, 2026
Page 9

In truth, Defendants repeatedly disputed the very relevance of the Investigation and Report materials, as illustrated above.[5]

Defendants' principal argument is that their refusal to stipulate to language prohibiting the Report or Investigation in this litigation "'for any purpose,'" it was "clearly evident to Plaintiff" that "Defendants intended to use the Report for some purposes." Letter at 2; *id.* at 5. But Plaintiff had no reason to believe those purposes included using the Investigation or Report as part of Defendants' merits defense, particularly when Defendants were disclaiming any such intent. Indeed, a literal reading of an "any purpose" prohibition would have potentially banned even internal uses by defense counsel in the case, such as using the Report as an internal reference for document reviewers, feeding the Report through an artificial intelligence program for insights, or reviewing it to make sure arguments asserted by Defendants in this litigation did not conflict with the Report, among others. Under the Stipulation agreed upon, these would be permitted uses. Defendants' claim that Plaintiff is "attempt[ing] to enforce" a "wholesale ban" of using the Report "'for any purpose'" ignores this nuance. Letter at 5. It is Plaintiff, not Defendants, who simply ask the Court to enforce the stipulation "as . . . written." Letter at 6 (citing *Waldorf*, 142 F.3d at 616-19).

Defendants cite to *Bohler-Uddeholm*, but their reliance is misplaced. The contract dispute there concerned a binary issue – either the agreement allowed third party sales, or it didn't, and one party had struck language referring to third parties and third party sales during the negotiations. *See Bohler-Uddeholm*, 247 F.3d at 99. Here, on the other hand, Defendants' non-agreement to an "any purpose" prohibition does not clearly demonstrate an intent to preserve a right to present the Investigation or Report as part of a merits defense. As described above, there are numerous other reasons Defendants could have objected to the "any purpose" language. In addition, the party that rejected draft language in *Bohler-Uddeholm* "met with [its counterparty] in order to clarify its understanding," and the court found that specific testimony and an affidavit along with "other evidence described above strongly support[ed] the inference that Uddeholm had **clearly communicated** its understanding." *Id.* The same cannot be said for Defendants here.[6]

---

[5]   Similarly, it is only now that Defendants claim that the shareholder demand letters triggering the Investigation and Report purportedly had "many" allegations that "were similar to the allegations in this case." Letter at 2. At the time of the negotiations, Defendants distanced this litigation from the Investigation and Report, emphasizing that the Investigation and Report were the subject of other litigation. ECF 264-3 at 10.

[6]   Contrary to Defendants' representation, the *Bohler-Uddeholm* Court did not hold that the "'rejected draft'" "'strongly support[ed] [any] inference.'" Letter at 5. That was merely an assertion by one of the parties. *Bohler-Uddeholm*, 247 F.3d at 99 ("Uddeholm contends that this evidence strongly supports . . . ."). In addition, *Uddeholm* applied Pennsylvania law, *id.* at 92, which is not controlling here.

Hon. Tonianne J. Bongiovanni
July 24, 2026
Page 10

In the June 29 hearing, the Court focused on the issue of the Parties' communications, asking Defendants whether they "ever raised or discussed with the plaintiffs" Defendants' intention of not being precluded from submitting the Report or information regarding the Investigation to their experts "for their review and consideration when they're formulating their reports." ECF 264-7 at 10-11. Defendants' counsel did not answer that question then, and they still haven't. The answer is *no*: they actually represented the opposite, disclaiming any intention of using the Investigation or Report to oppose Plaintiff's claims.

Defendants argue that Plaintiff and its counsel, being "sophisticated," should have known Defendants' true intentions to use the Report in its merits defense and that Plaintiff should have proposed an experts-specific stipulation. Letter at 5-6. But this again relies on the mistaken assumption that there is no difference between an "any purpose" prohibition and a prohibition on using the Investigation and Report in Defendants' merits defense. It also ignores Defendants' *explicit* and repeated representations to Plaintiff that they had no intention of using the Report to oppose Plaintiff's claims and that they did not believe the Report or Investigation themselves to be relevant. Viewed in that necessary context, Defendants essentially assert that Plaintiff should have known that Defendants were not negotiating in good faith or being fully honest. But Defendants' lack of complete candor should not be allowed to prejudice Plaintiff now.

Defendants' remaining arguments are equally unpersuasive.

First, Defendants' suggestion that the reason the Stipulation does not expressly say that Defendants' experts "might review or reference the Report" because "the parties were not drafting a list of all permitted uses" is a red herring. Letter at 5. The issue is not that Defendants failed to discuss or include *every* potential use. The issue is that Defendants *never* communicated, and in fact *denied*, any intent to use the Report or Investigation to oppose Plaintiff's claims.

Second, while Defendants point to Plaintiff's decision to not move to strike Defendants' citation to the Report in Defendants' class-certification opposition (Letter at 5), as Defendants acknowledge, Plaintiff responded to that citation by seeking related discovery, culminating in the Stipulation (*id.* at 2). Deciding to not burden the Court further regarding that discrete instance does not confirm that Defendants' citation – which predated and *led* to the Stipulation – would be an allowable use of the Report under the Stipulation.

Third, Defendants' contention that "the experts could have become aware" of the Report before they were retained is facile. *Id.* at 6. That awareness alone would not require the experts to rely upon or extol the Investigation or Report, or reference them in their own reports, thus preserving the ability to testify to them later.

Hon. Tonianne J. Bongiovanni
July 24, 2026
Page 11

Finally, Defendants point to Plaintiff's examining witnesses regarding the Report. *Id.* at 5. But under the Stipulation, Plaintiff, unlike Defendants, are not barred from using the Report as evidence.

In sum, both the plain language of the Stipulation and the Parties' negotiations were clear, and Defendants have violated the Stipulation.

### B. Defendants Must Submit Revised Expert Reports That Do Not Violate the Stipulation.

The appropriate remedy for Defendants' violation of the Stipulation is for Defendants to serve revised expert reports, with any reliance on, reference to, or mention of the Investigation and Report stricken.

#### 1. The Prejudice to Plaintiff Requires that the Expert Reports Be Revised

Defendants' violation of the Stipulation is highly prejudicial to Plaintiff. As discussed *supra*, Plaintiff negotiated and agreed to the Stipulation with the understanding that the Stipulation meant what it said: that Defendants would not use the Report or Investigation to support their case or attack Plaintiff's claims. In return, Plaintiff "relied on that bargain" and "abandoned discovery into the investigation entirely." ECF 264-7 at 3:19-24. Otherwise, Plaintiff would have sought "witness interview memoranda," "attorney notes," "attorney depositions," "attorney communications," and "underlying methodology." *Id*. at 4:2-8.[7] Plaintiff is thus not merely prejudiced because it did not have "the ability to 'test' the investigation." Letter at 7. "The harm is that expert discovery is being conducted on a record that violates [the Stipulation]" (ECF 264-7 at 13:20-22), Plaintiff's experts "have to respond to these three reports now," and Plaintiff "[has] to respond to this investigation" (*id*. at 4:2-4). As Defendants have violated the Stipulation, they of course should bear any resulting scheduling consequences. Letter at 7.[8]

---

[7]   Defendants' reliance on *In re Nat. Gas Commodities Litig.*, 232 F.R.D. 208 (S.D.N.Y. 2005) to argue that underlying documents are sufficient is inapt, because there, unlike here, defendants did not insert the investigations into the litigation, and plaintiff "made no reference at all to the interview memoranda in their submissions in support of their motion to compel." *Id.* at 212.

[8]   That Plaintiff has yet to serve rebuttal expert reports (Letter at 7) does not cure the prejudice caused by Defendants' reliance on the Report and Investigation. *N.J. Physicians United Reciprocal Exch. v. Med. Protective Co., Inc.*, 2017 WL 3623801, at *11 (D.N.J. Aug. 23, 2017) (Bongiovanni, M.J.) ("*NJPURE*") ("While Princeton's experts would be able to address Mr. Soudry's opinions using the information included in his reports, that does not change the fact that Princeton was denied timely access to this information and the ability to obtain discovery on it.").

CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C. \ ATTORNEYS AT LAW

Hon. Tonianne J. Bongiovanni
July 24, 2026
Page 12

Defendants argue that Plaintiff has suffered no prejudice because it has everything about the Investigation that Defendants' experts have (the Report itself). Letter at 7. But Defendants' experts, aligned as they are with Defendants, are perfectly content to take the Report itself as gospel without examining anything else regarding the Investigation. The prejudice is clear – Defendants and their experts would be free to make factual assertions and conclusions based on the Report concerning the Investigation, while Plaintiff would be deprived of the opportunity to seek evidence to the contrary. The proper remedy to cure this prejudice is for Defendants to strike any mention of the Investigation or Report from the expert reports. *NJPURE*, 2017 WL 3623801, at *12 (ordering service of a revised expert report "that does not reference or rely upon" particular information that was inappropriately withheld in discovery).

This case is on all fours with *NJPURE*. There, the plaintiff served expert reports which "rel[ied] on documents and information never produced in discovery." *NJPURE*, 2017 WL 3623801, at *4. This Court found that the defendant in *NJPURE* was prejudiced when prevented from seeking additional discovery at the proper stage of the case due to the plaintiff's failure to disclose information forming the basis of expert opinions until expert discovery. *Id*. at *7-*13. The Court further found that the *NJPURE* defendant was prejudiced in being forced to raise the issue with the Court. *Id.* at *9 ("There is simply no reason Princeton should have had to have expended the resources to do so and the Court finds this burden is sufficient to establish prejudice."). The Court ordered that the withholding party do what Defendants should do here: "serve . . . revised . . . expert report[s] that do[] not reference or rely upon" the withheld information. *Id*. at *12.

Defendants fail to show why the same result should not happen here. They attempt to distinguish the facts of this case from *NJPURE* by arguing that "[n]o court order has been violated" (Letter at 7), but they cite no case law for the proposition that the remedy should differ for a violation of a stipulation. They also argue that "no hidden data was supplied to Defendants' experts" (*id.* at 7), but the effect is the same because Plaintiff "has been denied the opportunity to arm its own experts with additional information regarding the previously unproduced information, thereby impairing its experts' ability to challenge the assertions contained" in the reports of Defendants' experts. *NJPURE*, 2017 WL 3623801, at *10. While Plaintiff has been aware of the public elements of the Report and Investigation "for years" (Letter at 7), this is irrelevant, because Plaintiff "would have sought additional discovery" on the Report and Investigation if Plaintiff knew Defendants intended to rely on them in violation of the Stipulation. *NJPURE*, 2017 WL 3623801, at *4.

Defendants admit that this dispute concerns only "seven paragraphs in three of [Defendants' seven] reports." Letter at 3. *See also* ECF 264-7 at 19:4-11 (Defendants stated during the June 29 hearing that this dispute concerns only 7 paragraphs out of more than 550). Their claims of "unnecessary costs to amend expert reports" (Letter at 7) thus ring hollow. Defendants also claim

Hon. Tonianne J. Bongiovanni
July 24, 2026
Page 13

that revising these seven paragraphs would "forc[e] the experts to act as if a public fact they are aware of does not exist" (*id.*), but Defendants should have no issue with this considering that they spent months assuring Plaintiff that the Investigation and Report were not relevant to this litigation. Defendants' purported concern also does not square with their claim that the Report and Investigation merely "aligns with opinions the experts reached." *Id.* at 4. If the experts relied so heavily on the Investigation and Report that striking particular paragraphs is not possible, the reports should be wholly stricken. Otherwise, the offending paragraphs should be stricken as in *NJPURE*.[9]

Defendants argue that rather than enforce the prohibitions set forth in the Stipulation (which are not dependent on a showing of unfair prejudice or any other showing), Plaintiff should wait until trial to raise these issues under the far higher bar of unfair prejudice under the Federal Rules of Evidence. Letter at 7. This argument completely ignores the clear language of the Stipulation, as well as the precedent in the Third Circuit of enforcing parties' stipulations. In essence, Defendants want out of the Stipulation. The Court should deny that thinly veiled request.

### 2.      Defendants' Proposal of Additional Discovery is Inadequate

Perhaps realizing they are on shaky ground, Defendants belatedly offer to make a single deponent, Ms. Debra Wong Yang, available for deposition over six years after the Investigation concluded and the Report was issued. This is plainly inadequate for several reasons. ***First***, Ms. Wong Yang's testimony – which in itself would undoubtedly result in privilege disputes, given Ms. Wong Yang's representation of J&J's Board in the Investigation – would not come close to compensating for the important contemporaneous material Plaintiff would have sought in discovery if the Parties had not agreed to the Stipulation, including document discovery. *See NJPURE*, 2017 WL 3623801, at \*10 ("While the Court appreciates that depositions can be used to elucidate the parties' positions, they are not a substitute for adequate paper discovery."); *see also Harding v. Dana Transp.*, 914 F.Supp. 1084, 1103 (D.N.J. 1996) (compelling investigator to sit for deposition, and compelling defendant to produce "[a]ny and all documents, letters, memos, handwritten notes and/or tapes that refer to, relate to or evidence any investigation" and "[a]ny and all correspondence

---

[9]   Defendants' cited authority that exclusion is improper is inapt. *Quinn v. Consol. Freightways Corp.*, 283 F.3d 572, 576 (3d Cir. 2002) ("both sides had learned about [the purportedly undisclosed information] at the same time"); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 792 (3d Cir. 1994) (unlike here, plaintiffs identified the expert at issue "only a month after the district court's deadline," meaning "the defendants had abundant time to depose [the expert] regarding the specifics of his proposed program before the discovery deadline"); *ABB Air Preheater, Inc. v. Regenerative Env'l Equip. Co.*, 167 F.R.D. 668, 669, 672-73 (D.N.J. 1996) ("there ha[d] simply been no violation of Rule 26(a)(2)" when defendant's expert opined on an element of the case "for the first time in [a] rebuttal report" because such an argument "[was] in the nature of rebuttal evidence").

**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C. \ ATTORNEYS AT LAW**

Hon. Tonianne J. Bongiovanni
July 24, 2026
Page 14

between Dana Transport, Inc., and deponent pertaining to the investigation to be conducted, or previously conducted, by deponent"). **Second**, memories concerning the Report and Investigation have faded and grown stale for over six years, and so raises additional prejudice issues. **Third**, a deposition without relevant contemporaneous documents as exhibits would starve Plaintiff of the ability to effectively cross-examine the witness or refresh her memory. And **fourth**, a deposition of only Ms. Wong Yang would not adequately permit Plaintiff to explore J&J's role, decisions, and processes relating to the Investigation or Report, as it would only cover what Ms. Wong Yang was made aware of (and is permitted to communicate by J&J before privilege issues are resolved). Plaintiff would not be able to address information learned with other fact witnesses, as they would have been entitled to do had they not been induced to forego discovery into the Investigation and Report when fact discovery was still ongoing. For all of these reasons, a single deposition, with zero document production, would be entirely inadequate, even if the Stipulation never existed.

Defendants incorrectly assert, without explanation, that "Plaintiff's aversion to discovery undermines its claim of prejudice." Letter at 7. Plaintiff's aversion is not "to discovery" but rather to allowing a party to freely enter into a stipulation, obtain the benefit of that bargain, and then violate that bargain with impunity. Were the Court to order some kind of limited discovery as a remedy here, it would do just that. The Third Circuit has cautioned that ***"[a]llowing parties easily to set aside or modify stipulations would defeat [the] purpose" of promoting judicial economy, "wasting judicial resources and undermining future confidence in such agreements."*** *Waldorf*, 142 F.3d at 616. Defendants boldly invite the Court to ignore this clear precedent, asking for "the stipulation's limitations on Defendants' use of the Gibson Dunn Report" to be lifted if Plaintiff receives any discovery. Letter at 8 n. 4. The Court should decline that invitation.

Were the Court to reopen discovery and essentially let Defendants out of the Stipulation they agreed to, the Parties would also be back to square one, with Plaintiff seeking full discovery regarding the Investigation. Even if granted, this would not cure the prejudice suffered by Plaintiff of memories fading for years, as well as the lengthy delay this would cause in an already longstanding case. *NJPURE*, 2017 WL 3623801, at *11 n.9 ("extension would be disruptive to this litigation, likely prolonging the pretrial of this matter (and therefore delaying the trial of this matter) for several months").

Undoubtedly, reopening discovery would result in a protracted fight over privilege, as Defendants' Letter suggests. *See* Letter at 8. Notably, even under their own authority, Defendants have likely waived any work-product protections by "'voluntarily inject[ing]' protected information into the litigation." *Utesch v. Lannett Co., Inc.*, 2020 WL 7260775, at *9-*10 n.9 (E.D. Pa. Dec. 9, 2020) (no waiver of privilege where there was "no reference to the results of the internal investigation"); *see also Harding*, 914 F.Supp. at 1103 (finding defendant "waived its right to assert

Hon. Tonianne J. Bongiovanni
July 24, 2026
Page 15

privilege by affirmatively inserting the issue of the investigation into the litigation").[10]  Here, Defendants have injected the Investigation and Report into this action by relying on their results.

In sum, the appropriate remedy is for Defendants' experts to serve revised reports removing any reliance on or reference to the Report and Investigation.

## III.    Conclusion

The plain language of the Stipulation, and the Parties' intent, clearly prohibits Defendants' injection of the Investigation and Report into this litigation as part of their merits defense.  Plaintiff respectfully requests that the Court enforce the Stipulation agreed to by the Parties, consistent with Third Circuit precedent, by ordering Defendants to serve revised expert reports that do not rely on or refer to the Investigation or Report.  As described above, this is the only adequate remedy for curing the prejudice suffered by Plaintiff.

Respectfully submitted,

/s/ James E. Cecchi

JAMES E. CECCHI
CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.

cc:    Counsel of Record

---

[10]    *Regents of the University of Minnesota v. United States*, 340 F.R.D. 293 (D. Minn. 2021) is also inapt because there, the party asserting work-product protection over an internal report represented that it "d[id] not intend to make testimonial use of the Documents."  *Id.* at 315.

## CERTIFICATE OF SERVICE

I, James E. Cecchi, hereby certify that on July 24, 2026, I caused the foregoing Lead Plaintiff San Diego County Employees Retirement Association's Letter to Judge Tonianne J. Bongiovanni, U.S.M.J. filed Under Seal, to be served by email on the following counsel:

*Counsel for Plaintiff*:

James E. Cecchi (jcecchi@carellabyrne.com)
Donald A. Ecklund (decklund@carellabyrne.com)
Kevin G. Cooper (kcooper@carellabyrne.com)
**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C**.
5 Becker Farm Road Roseland, NJ 07068
Telephone:  973/994-1700

Darren J. Robbins (darrenr@rgrdlaw.com)
Tor Gronborg (torg@rgrdlaw.com)
Sam Sheldon (ssheldon@rgrdlaw.com)
Scott H. Saham (scotts@rgrdlaw.com)
Jonah H. Goldstein (jonahg@rgrdlaw.com)
Robert R. Henssler Jr. (bhenssler@rgrdlaw.com)
Nathan R. Lindell (nlindell@rgrdlaw.com)
Hillary B. Stakem (hstakem@rgrdlaw.com)
Matthew J. Balotta (mbalotta@rgrdlaw.com)
Laura Andracchio (landracchio@rgrdlaw.com)
Joseph Tull (jtull@rgrdlaw.com)
Megan M. Sonney (msonney@rgrdlaw.com)
**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058

*Counsel for Defendants*:

Walter C. Carlson (wcarlson@sidley.com)
Kristen R. Seeger (kseeger@sidley.com)

John M. Skakun III (jskakun@sidley.com)
Christopher Y. Lee (chris.lee@sidley.com)
Neil H. Conrad (nconrad@sidley.com)
Abigail B. Molitor (amolitor@sidley.com)
Gina R. Bohannon (gbohannon@sidley.com)
Caroline A. Wong (caroline.wong@sidley.com)
Maseeh Moradi (mmoradi@sidley.com)
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, IL  60603
Telephone:  312/853-7000

Robert M. Stern (rstern@orrick.com)
**ORRICK HERRINGTON & SUTCLIFF LLP**
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005
Telephone:  202/339-1706

Allison M. Brown (allison.brown@skadden.com)
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
One Manhattan West
395 9th Avenue
New York, NY  10001
Telephone:  212/735-3222

Jack N. Frost, Jr. (jack.frost@faegredrinker.com)
**FAEGRE DRINKER BIDDLE & REATH LLP**
600 Campus Drive
Florham Park, NJ  07932
Telephone:  973/549-7000

Dated:  July 24, 2026

/s/ James E. Cecchi
JAMES E. CECCHI

**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C. \ ATTORNEYS AT LAW**